**XIAO JI CHEN, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Attorney General Alberto R. Gonzales,\* Respondent.**

**Docket No. 02–4631.**

United States Court of Appeals, Second Circuit.

Submitted: Feb. 23, 2005.

Decided: Jan. 6, 2006.

Errata Filed: Jan. 11, 2006.

* Attorney General Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as respondent. *See* Fed. R.App. P. 43(c)(2).

146

Bruno Joseph Bembi, Hempstead, NY, for Petitioner.

Donna A. Krappa, Assistant United States Attorney (Christopher J. Christie, United States Attorney for the District of New Jersey, on the brief), United States Attorney's Office for the District of New Jersey, Newark, NJ, for Respondent.

JOSÉ A. CABRANES, Circuit Judge.

Petitioner Xiao Ji Chen, a native and citizen of the People's Republic of China, petitions this Court for review of a September 25, 2002 order of the Board of Immigration Appeals ("BIA") summarily affirming a November 17, 2000 decision of an immigration judge ("IJ"). The IJ found petitioner's application for asylum, which was filed more than one year after her arrival in the United States, untimely. *See* 8 U.S.C. § 1158(a)(2)(B). He further found that she had not established either "changed circumstances which materially affect[ed] [her] eligibility for asylum" or the existence of "extraordinary circumstances" that would have excused her tardiness in filing her application. *Id.* § 1158(a)(2)(D). Finally, the IJ denied petitioner's application for withholding of removal based on his finding that she failed to establish that were she to return to China, it was more likely than not that she would be subject to persecution or torture. *See id.* § 1231(b)(3)(A); 8 C.F.R. § 1208.16(c).

In her petition for review to this Court, petitioner urges that her lateness in filing her asylum application should have been excused by the IJ because she demonstrated both "changed circumstances" materially affecting her eligibility for asylum and "extraordinary circumstances" that prevented her from timely filing her application. Specifically, she asserts that there were "changed circumstances" because, shortly before her hearing before the IJ, she gave birth in the United States to her second child, who automatically, by operation of law, is a citizen of the United States. She claims also that "extraordinary circumstances" affecting the timeliness of her asylum application existed because the Immigration and Naturalization Service ("INS") "failed to have a procedure in place that would have permitted [her] to preserve a request for asylum when she was first detained by [the] INS within her first year of being in the United States."[1] Pet'r's Br. at 5. Petitioner av-

1. On April 27, 1999, approximately eleven months after her arrival in the United States, petitioner was detained for approximately 5–6 hours by INS officials and was ordered to appear at a removal hearing in August 1999. According to petitioner, while the hearing was pending, "she was no longer able to submit an asylum application to an asylum office" because 8 C.F.R. § 208.2(b) confers "exclusive jurisdiction over asylum applications filed by an alien who has been served a ... Form I-862, Notice to Appear" to the immigration court and that "under the operating procedures adopted by the immigration courts, [she] was barred from mailing an asylum application to the immigration court before the date of hearing." Pet'r's Br. at 20–21 (internal quotation marks omitted). Before

ers, *inter alia*, that, in finding that she did not demonstrate circumstances that would excuse her lateness in filing her asylum application, the IJ and the BIA violated her right to due process and "fail[ed] to apply the law." *Id.* at 13, 18. Finally, petitioner alleges that the IJ's determination that she is ineligible for withholding of removal under either the Immigration and Nationality Act of 1952 ("INA"), as amended, or the United Nations Convention Against Torture ("CAT") [2] is not supported by substantial evidence.

For the reasons that follow, we dismiss for lack of jurisdiction petitioner's contention that the IJ committed an error of law or otherwise abused his discretion when he declined to excuse her lateness in filing her asylum application. We hold that (1) we are without jurisdiction to review the IJ's discretionary determination that petitioner failed to establish changed or extraordinary circumstances, and (2) because there is no disputed issue of statutory construction, we lack jurisdiction to review petitioner's claim that the IJ "fail[ed] to apply the law" and therefore committed error purportedly giving rise to "questions of law" within the meaning of Section 106(a)(1)(A)(iii) of the REAL ID Act of 2005 ("Section 106"), Pub. L. No. 109-13, 119 Stat. 231, 302 (codified at 8 U.S.C. § 1252(a)(2)(D)).

Insofar as petitioner's contention that the IJ "fail[ed] to apply the law" may be construed as a claim under the Due Process Clause of the Fifth Amendment, we hold that we possess jurisdiction to review the claim under Section 106 but conclude that the claim lacks merit. Finally, we conclude that the IJ's decision denying petitioner's application for withholding of removal is supported by substantial evidence and it is clear that the IJ would reach the same decision in the absence of the noted deficiencies.

## BACKGROUND

In her removal hearing before the IJ, petitioner alleged past and future persecution based on her opposition to the Chinese family planning policy, testifying that she had been forced to undergo an abortion in October 1997 and that she would be sterilized were she to return to China. Petitioner stated that she had been required to sign a family planning agreement upon her marriage in November 1992, and that, as a factory worker, she had been designated as living in an "urban household," a status that limited her to having only one child. Five months after the birth of her first child in September 1994, petitioner alleged, the Chinese government forced her to undergo the insertion of an intrauterine device ("IUD"), after which she was required to attend quarterly examinations to confirm that she was not pregnant and that the IUD remained in

the IJ and the BIA, petitioner maintained that she had orally indicated her intent to apply for asylum when she was detained by INS officers, but she never claimed that she was barred—either by regulation or the agency's operating procedures, *see id.*—from submitting an asylum application before her removal hearing. Because the latter argument was not raised, we cannot consider it, as petitioner has failed to exhaust her administrative remedies. *See* 8 U.S.C. § 1252(d)(1); *Cervantes-Ascencio v. U.S. INS*, 326 F.3d 83, 87 (2d Cir.2003) (recognizing that § 1252(d)(1)'s "exhaustion requirements [require a petitioner] to raise issues to the BIA in order to preserve them for judicial review"); *see also* 8 U.S.C. § 1252(b)(4)(A) (providing that "the court of appeals shall decide the petition [for review] only on the administrative record on which the order of removal is based").

2. United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85; *see also* 8 C.F.R. § 1208.16 (regulations implementing the CAT).

place. According to petitioner, the IUD fell out at some unidentified time, and she became pregnant again in June 1997. Petitioner asserts that she then missed her next two IUD check-ups scheduled for July 1997 and October 10, 1997; during this time period, petitioner went into hiding at her mother's home in another village, despite continuing to report to work. According to petitioner, the local birth control officials became suspicious of her and, as a result, called her mother's home and came to petitioner's workplace on October 19, 1997. Petitioner testified that she was then taken to a doctor, at which time her pregnancy was discovered, and she was forced to undergo an abortion. Rather than return approximately ten days later for sterilization, as she had been instructed, petitioner states that she made arrangements to flee to the United States, where she arrived on or about May 21, 1998. Petitioner gave birth in the United States to a second child in April 2000.

In a decision issued at the conclusion of petitioner's hearing, the IJ rejected petitioner's application for asylum on the grounds that she had failed to file her application within one year of her arrival in the United States, as required by 8 U.S.C. § 1158(a)(2)(B), and that she had failed to establish either "changed circumstances" materially affecting her eligibility for asylum or "extraordinary circumstances" excusing her untimely filing. The IJ then concluded that, even if petitioner's asylum application was not in fact time-barred, she had failed to establish a credible case of past or future persecution entitling her either to asylum or withholding of removal. Citing several specific examples, the IJ stated that petitioner's testimony was "inherently improbable, internally inconsistent, inconsistent with her written application as well as some of her supporting documents," and "contradicted by the State Department profile" of country conditions in China. Decision of the Immigration Judge, Nov. 17, 2000 ("IJ Decision"), at 9. Accordingly, the IJ concluded that petitioner had failed to satisfy her burden of proof to demonstrate eligibility for the relief requested.

On September 25, 2002, the BIA summarily affirmed, without opinion, the decision of the IJ. This petition for review followed.

## DISCUSSION

Where, as here, the BIA has affirmed the IJ's decision without an opinion, we review the IJ's decision directly under a standard of "substantial evidence." *See Yu Sheng Zhang v. U.S. Dep't of Justice,* 362 F.3d 155, 158–59 (2d Cir.2004); 8 C.F.R. § 1003.1(e)(4) (setting forth procedures for affirmance without opinion). We consider first whether we have jurisdiction to review the IJ's discretionary determination, with respect to petitioner's asylum claim, that petitioner failed to establish either changed or extraordinary circumstances under 8 U.S.C. § 1158(a)(2)(D). We then evaluate petitioner's claim that the IJ improperly rejected her request for withholding of removal under both the INA and the CAT.

### I. Asylum

Title 8, Section 1158(a)(1) of the United States Code provides, in relevant part, that "[a]ny alien who is physically present in the United States or who arrives in the United States ... may apply for asylum." That statutory provision, however, is limited by § 1158(a)(2)(B), which states that § 1158(a)(1) "shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application [for asylum] has been filed within 1 year after the date of the alien's arrival in the United States." A

discretionary exception to § 1158(a)(2)(B)'s one-year bar is created by § 1158(a)(2)(D), which provides that

> [a]n application for asylum of an alien *may be considered,* notwithstanding [an alien's failure to apply for asylum within one year of the alien's arrival or the denial of a prior asylum application], if the alien demonstrates *to the satisfaction of the Attorney General* either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [one-year] period[.]

8 U.S.C. § 1158(a)(2)(D) (emphases added). Finally, 8 U.S.C. § 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under [§ 1158(a)(2) ]."

Based on the foregoing, our sister circuits have uniformly recognized that we lack jurisdiction to review an asylum application that the BIA has deemed untimely or as to which the BIA has found neither changed nor extraordinary circumstances excusing the untimeliness. *See, e.g., Njenga v. Ashcroft,* 386 F.3d 335, 339 (1st Cir. 2004); *Zaidi v. Ashcroft,* 377 F.3d 678, 681 (7th Cir.2004); *Castellano-Chacon v. INS,* 341 F.3d 533, 544 (6th Cir.2003); *Tarrawally v. Ashcroft,* 338 F.3d 180, 185 (3d Cir.2003); *Tsevegmid v. Ashcroft,* 336 F.3d 1231, 1234–35 (10th Cir.2003); *Fahim v. U.S. Att'y Gen.,* 278 F.3d 1216, 1217–18 (11th Cir.2002); *Hakeem v. INS,* 273 F.3d 812, 815 (9th Cir.2001); *Ismailov v. Reno,* 263 F.3d 851, 854–55 (8th Cir.2001).

The statutory landscape, however, has changed somewhat since these courts held that § 1158(a)(3) deprives our Court of jurisdiction to review such an asylum application. Specifically, on May 11, 2005, the REAL ID Act of 2005, Pub. L. No. 109–13, 119 Stat. 231, 302 ("REAL ID Act") took effect. Among its other reforms,[3] the REAL ID Act amends section 242 of the INA to provide that "[n]othing in ... any ... provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." REAL ID Act § 106(a)(1)(A)(iii) ("Section 106") (codified at 8 U.S.C. § 1252(a)(2)(D)). Because Section 106 applies to all appeals from removal orders "issued before, on, or after the date of the enactment," May 11, 2005, that provision governs our jurisdiction to review petitioner's claims. *See* REAL ID Act § 106(b); *see also Marquez-Almanzar v. INS,* 418 F.3d 210, 215 (2d Cir.2005) (acknowledging that the REAL ID Act governs review of removal orders).

Section 106 confers jurisdiction on our Court to review "constitutional claims or questions of law." The term "constitutional claims" clearly relates to claims brought pursuant to provisions of the Constitution of the United States.

By contrast, "questions of law" does not have a similarly clear meaning, and the

3. As recognized by the Third Circuit in *Bonhometre v. Gonzales,* 414 F.3d 442 (3d Cir. 2005), a primary effect of the REAL ID Act, which is not at issue here, is to convert habeas corpus petitions filed by criminal aliens seeking review of their removal orders into petitions for review in order to "limit all aliens to one bite of the apple ... [and thereby] streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review)." *Id.* at 446; *see also Marquez-Almanzar v. INS,* 418 F.3d 210, 216 (2d Cir.2005) (noting "the REAL ID Act's elimination of [28 U.S.C.] § 2241 [habeas] relief as a means to review orders of removal").

terms of the REAL ID Act provide no guidance as to the precise content of that phrase, which is subject to countless interpretations. Construed in the broadest sense possible, "questions of law" would encompass any question related to law or having any legal dimension—that is, anything pertaining to the work in which courts are engaged, including virtually all decisions in the immigration field. For the reasons that follow, we conclude that "questions of law" could not have been intended to expand our jurisdiction in such a boundless fashion.

First, vested with its broadest meaning, "questions of law" would, at a minimum, include all constitutional claims, which by definition raise legal questions. Yet the statute refers to two separate categories: "constitutional claims or questions of law." Had Congress intended "questions of law" to be understood as questions pertaining to law generally, it would have been redundant to include "constitutional claims" in Section 106. Because, as a matter of statutory construction, we do not assume Congress intended to include pure "surplusage" in its enactments, we cannot read "questions of law" in the broadest possible light. *See Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant[.]") (internal quotation marks omitted); *Dunn v. Commodity Futures Trading Comm'n,* 519 U.S. 465, 472, 117 S.Ct. 913, 137 L.Ed.2d 93 (1997) (recognizing the "doctrine that legislative enactments should not be construed to render their provisions mere surplusage").

Second, the broadest meaning of "questions of law" would bring within our jurisdiction questions raised in certain kinds of claims that the INA expressly removes from our jurisdiction. *See, e.g.,* 8 U.S.C. § 1252(a)(2)(B)(i) (depriving courts of jurisdiction to review "*any judgment* regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title") (emphasis added); 8 U.S.C. § 1252(a)(2)(B)(ii) (depriving courts of jurisdiction to review "*any other decision or action* of the Attorney General ... the authority for which is specified under this subchapter to be *in the discretion* of the Attorney General") (emphases added). All questions arising in the context of such claims could not, therefore, have been included in the meaning of the phrase in Section 106, for this would suggest that Congress intended to repeal the jurisdiction-denying provisions of the INA, even if only in part, by implication. Because "absent a clearly established congressional intention, repeals by implication are not favored," we cannot read "questions of law" so broadly. *See Branch v. Smith,* 538 U.S. 254, 273, 123 S.Ct. 1429, 155 L.Ed.2d 407 (2003) (plurality opinion) (internal quotation marks and citations omitted).

Third, in light of our obligation to interpret "questions of law" in the context of the REAL ID Act as a whole, *see, e.g., United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 372, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("[S]tatutory construction ... is a holistic endeavor."), we are mindful of the fact that the title of the subsection containing the phrase "questions of law" is "JUDICIAL REVIEW OF *CERTAIN* LEGAL CLAIMS," REAL ID Act § 106(1)(A)(iii) (emphasis added) (codified at 8 U.S.C. § 1252(a)(2)(D)), thereby suggesting that only a subset of legal claims is included. Although the title of a section does not control the meaning of the text in that section, *see INS v. St. Cyr,* 533 U.S. 289, 308–09, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the title may nevertheless be useful if it "shed[s] light on some ambiguous word or phrase." *Penn. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (internal quotation marks omitted) (alteration in original). Here, the title suggests that "questions of law" does not mean *all* questions having a legal dimension because the section covers only *certain* legal claims.

It is, therefore, evident that "questions of law" cannot be construed in the broadest possible light. Nevertheless, the statutory text provides no guidance as to how Congress intended to limit the phrase. Accordingly, we turn to the legislative history of the REAL ID Act in order to ascertain Congress's intent. *See, e.g., Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981) ("The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect."); *United States v. Pabon-Cruz,* 391 F.3d 86, 98 (2d Cir.2004) (noting "the need to consult ... legislative history" when statutory language is ambiguous).

As Committee Reports are the most authoritative sources on the meaning of legislation,[4] we look to the House Conference Committee Report on the REAL ID Act. That report explains that the original draft of the statute used the phrase "pure questions of law," but that the word "pure" was later deleted because "it is superfluous." H.R.Rep. No. 109-72, at 175 (2005). "The word 'pure' add[ed] no meaning" because "[t]he purpose of section 106(a)(1)(A)(iii) is to permit judicial review over those issues that were historically reviewable on habeas—*constitutional and statutory-construction questions, not discretionary or factual questions.*" *Id.* (emphasis added).[5] Accordingly, for the purposes of the REAL ID Act, "a 'question of law' is a question regarding the construction of a statute." *Id.* Recently, in *Ramadan v. Gonzales,* 427 F.3d 1218, 1222 (9th Cir.2005), the Ninth Circuit concluded that "the legislative history makes it abundantly clear this term refers to a narrow category of issues regarding statutory construction." *Id.* at 1222. We agree with the *Ramadan* Court's analysis and hold that the term "questions of law" in Section 106 refers to "a narrow category of issues regarding statutory construction." [6] *Id.*

4. *See generally Thornburg v. Gingles,* 478 U.S. 30, 43 n. 7, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986) ("We have repeatedly recognized that the authoritative source for legislative intent lies in the Committee Reports on the bill."); *United States v. Awadallah,* 349 F.3d 42, 54 (2d Cir.2003) ("[T]he authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.") (internal quotation marks omitted) (alteration in original).

5. The reference to issues traditionally reviewable in a habeas corpus petition relates to the origins of the REAL ID Act. In *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), the Supreme Court held that neither the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") nor the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") deny federal courts jurisdiction over habeas corpus petitions under 28 U.S.C. § 2241 brought by aliens in custody pursuant to a deportation order. *Id.* at 314, 121 S.Ct. 2271. Congress was concerned that after *St. Cyr,* "aliens who have committed serious crimes in the United States are generally able to obtain more judicial review than non-criminal aliens." H.R.Rep. No. 109-72, at 174. "[U]nder *St. Cyr,* criminal aliens [were] able to begin the judicial review process in the district court, and then appeal to the circuit court of appeals," whereas "non-criminal aliens [were able to] generally seek review only in the courts of appeals." *Id.* Section 106 was thus intended to cure "the anomalies created by *St. Cyr* and its progeny," *id.,* by depriving criminal aliens of the opportunity to bring petitions pursuant to 28 U.S.C. § 2241, but permitting us to review "those issues that were historically reviewable on habeas," H.R.Rep. No. 109-72, at 175, when we consider petitions for review of final orders of removal.

This historical background confirms our narrow reading of the phrase "questions of law," because "federal jurisdiction over [28 U.S.C.] § 2241 [habeas] petitions is properly limited to purely legal statutory and constitutional claims and does not extend to review of discretionary determinations by the IJ and the BIA." *Duamutef v. INS,* 386 F.3d 172, 181 (2d Cir.2004) (internal quotation marks omitted).

6. Additionally, our conclusion is informed by the overall purpose of the jurisdictional provisions of the INA—the strict *limitation* of judicial review of immigration cases. As Judge Learned Hand noted, "statutes always have

Because the REAL ID Act only provides us with jurisdiction to review constitutional claims or matters of statutory construction, we remain deprived of jurisdiction to review discretionary and factual determinations. *See, e.g., Grass v. Gonzales,* 418 F.3d 876, 879 (8th Cir.2005) ("[Section 106] grants no jurisdiction to review an IJ's purely discretionary decision to deny a continuance of a removal hearing, unless that ruling resulted in such procedural unfairness as to implicate due process."); *Vasile v. Gonzales,* 417 F.3d 766, 768 (7th Cir.2005) ("Notwithstanding § 106(a) of the [REAL ID] Act, ... discretionary or factual determinations continue to fall outside the jurisdiction of the court of appeals entertaining a petition for review."); *Gattem v. Gonzales,* 412 F.3d 758, 767 & n. 8 (7th Cir.2005) (holding that, under Section 106, the courts of appeals have jurisdiction to consider "question[s] of law" raised in petitions for review, but not discretionary decisions of the Attorney General, such as whether to continue removal proceedings).

We are therefore without jurisdiction to review petitioner's claims to the extent that she asserts that the IJ abused his discretion when making factual determinations that she had failed to demonstrate either "changed" or "extraordinary" circumstances. *See Ramadan,* 427 F.3d at 1221–22 ("[T]he existence of 'changed circumstances' that materially affect eligibility for asylum is a predominantly factual determination, which will invariably turn on the facts of a given case."); *Chacon–Botero v. U.S. Att'y Gen.,* 427 F.3d 954, 957 (11th Cir.2005) ("The timeliness of an asylum application is not a constitutional claim or question of law covered by the REAL ID Act's changes."); *Vasile,* 417 F.3d at 768 (concluding that factual determinations regarding the one-year bar and the existence of changed or extraordinary circumstances "simply do[ ] not fit" in the "question of law category").

An IJ's finding as to whether a petitioner has established "changed" or "extraordinary" circumstances, moreover, entails not only a "predominantly factual" inquiry, *see Ramadan,* 427 F.3d at 1221–22, but also constitutes a discretionary determination. The plain language of the statute specifically provides that "changed" or "extraordinary" circumstances must be established *"to the satisfaction of the Attorney General,"* 8 U.S.C. § 1158(a)(2)(D) (emphasis added)—language that "clearly entrusts the decision to the Attorney General's discretion," *see Kalkouli v. Ashcroft,* 282 F.3d 202, 204 (2d Cir.2002) (construing phrase "in the opinion of the Attorney General"). *See also Vasile,* 417 F.3d at 768 ("Permissive language that refers to demonstrating something to the agency's 'satisfaction' is inherently discretionary."); *cf.* 8 U.S.C. § 1158(a)(2)(D) (providing that an untimely asylum application *"may be considered"* upon a showing of "changed" or "extraordinary" circumstances) (emphasis added). Judicial review of such discretionary decisions, we conclude, falls outside the scope of Section 106 of the REAL ID Act and thus remains precluded by the jurisdictional bar established at 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under [§ 1158(a)(2)].").

■■ Petitioner further contends that, in rejecting her claim of changed or extraordinary circumstances, the IJ violated her rights by "fail[ing] to apply the law." Pet'r's Br. at 17.[7] Petitioner suggests

some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.1945), *aff'd* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945). We therefore heed the warning of the English jurist who cautioned courts against interpreting legislative enactments so woodenly that "it is not enough [for a statute] to attain to a degree of precision which a person reading in good faith can understand; but it is necessary to attain if possible to a degree of precision which a person reading in bad faith cannot misunderstand." *In re Castioni,* [1891] 1 Q.B. 149, 167 (Stephen, J., concurring).

7. Petitioner invokes the standard for reviewing due process claims in her brief, Pet'r's Br.

that the IJ either committed legal error or violated her rights to procedural or substantive due process. Inasmuch as petitioner alleges that the IJ erred in resolving a "question[ ] of law," we are without jurisdiction to review her claim because she does not argue that the IJ engaged in erroneous statutory construction. *See ante* at 153–54. To the extent that she intends to assert a claim pursuant to the Due Process Clause, she has brought a "constitutional claim[ ]" that we may review. *See id.* Nevertheless, that constitutional claim is plainly without merit. Petitioner points to nothing in the record suggesting that she was denied a full and fair opportunity to present her claims; nor has she established that the IJ or BIA otherwise deprived her of fundamental fairness.

For the reasons stated, we dismiss the petition insofar as petitioner contends that the IJ committed legal error or otherwise abused his discretion in denying her application for asylum as untimely, and we deny the petition to the extent petitioner contends that the IJ violated her constitutional rights.

## II. Withholding of Removal

In addition to seeking review of the BIA's refusal to consider her untimely asylum application on the merits, petitioner challenges the IJ's denial—affirmed by the BIA—of her application for withholding of removal. As the IJ recognized, eligibility for withholding of removal is not subject to 8 U.S.C. § 1158(a)(2)(B)'s one-year bar and, accordingly, must be considered by the BIA regardless of the timeliness of the initial asylum request. *Compare* 8 U.S.C. § 1158(b)(1)(A) ("[T]he Attorney General *may* grant asylum to an alien who has applied for asylum ....") (emphasis added), *with* 8 U.S.C. § 1231(b)(3)(A) ("[T]he Attorney General *may not* remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.") (emphasis added).

To qualify for withholding of removal under the INA, an applicant must estab-

at 13 ("Review of due process claims ... is ... *de novo*."), and argues that the IJ "fail[ed] to apply the law," *id.* at 17. Petitioner concedes that "the IJ's and the [BIA]'s decisions concerning the one-year bar may be insulated from judicial review" by the provisions of the INA. *Id.* at 18. Nevertheless, she maintains that "their refusal to apply the law remains reviewable." *Id.* After the submission of briefing in this case, the REAL ID Act entered into force; accordingly, we construe petitioner's argument that elements of the IJ's decision "remain[ ] reviewable," *id.*, and that the IJ "fail[ed] to apply the law," *id.* at 17, in the light most favorable to petitioner under the current statutory framework—namely, that she seeks to assert "constitutional claims" and raise "questions of law."

Alternatively, petitioner's argument may be construed as a claim that the IJ was unaware of his statutory authority pursuant to 8 U.S.C. § 1158(a)(2)(D), *see Grass*, 418 F.3d at 878–79 (recognizing jurisdiction to review "a claim that the agency erred as a matter of law in failing to recognize the Attorney General's statutory authority to grant discretionary relief"). The record does not support this contention, however. An IJ is not required to engage in "robotic incantations." *Cf. United States v. Brown*, 98 F.3d 690, 694 (2d Cir. 1996) ("We do not require that district judges by robotic incantations state 'for the record' or otherwise that they are aware of this or that arguable authority to depart but that they have consciously elected not to exercise it."). Rather, we maintain a strong presumption that IJs, administrative triers of fact charged with the statutory authority to implement the provisions of the INA, are aware of that authority unless the record presents compelling evidence suggesting otherwise. *Cf. id.* (noting our "strong presumption that a district judge is aware of the assertedly relevant grounds for departure" in the context of sentencing). In any event, here the IJ recited the applicable regulatory provisions and specifically stated that petitioner had not demonstrated the existence of changed or extraordinary circumstances that would merit a favorable grant of discretion. Accordingly, the IJ undoubtedly understood his discretionary authority to excuse petitioner's lateness in filing her asylum application.

lish that there is a "clear probability" that if she were removed, her life or freedom would be threatened on account of political opinion or the other protected grounds listed in 8 U.S.C. § 1231(b)(3)(A). *See, e.g., Secaida–Rosales v. INS,* 331 F.3d 297, 306 (2d Cir.2003). Similarly, to qualify for withholding of removal under the CAT, an applicant must demonstrate that it is more likely than not that she will be tortured if she returns to the proposed country of removal. *See Wang v. Ashcroft,* 320 F.3d 130, 133–34 (2d Cir.2003) (citing 8 C.F.R. § 208.16(c)(2)). Evidence of past persecution creates "a rebuttable presumption ... that there is a clear probability of a future threat should the applicant be returned." *Secaida–Rosales,* 331 F.3d at 306; *see also* 8 C.F.R. § 208.16(b)(1).

In the instant case, petitioner argues that she is entitled to withholding of removal under both the INA and the CAT because her alleged subjection to a forced abortion in China would create a rebuttable presumption that it is more likely than not that she will be sterilized, or otherwise persecuted, if she returns to China. She contends that forcible sterilization is particularly likely since, in contravention of China's family-planning policy, she has had more children since arriving in the United States.

The BIA has recognized that "[c]oerced sterilization [should be] viewed as a permanent and continuing act of persecution." *In re Y–T–L–,* 23 I. & N. Dec. 601, 607, 2003 WL 21206539 (BIA 2003); *see also* 8 U.S.C. § 1101(a)(42) (treating coercive family planning as persecution on the basis of political opinion). Consequently, if petitioner had demonstrated to the IJ that there was a clear probability that she would be sterilized if she returned to China, she would be entitled to withholding of removal under the INA. Such relief was denied, however, because the IJ found that petitioner had not met her burden of proof, given that her testimony was "inherently improbable, internally inconsistent, [and] inconsistent with her written application as well as some of her supporting documents." [8] IJ Decision at 9.

Because asylum and withholding of removal determinations require intensive factual inquiries that appellate courts are ill-suited to conduct, the INA tightly circumscribes our review of factual findings, including adverse credibility determinations, by an IJ. *See* 8 U.S.C. § 1252(b)(4)(B) (providing that on appeal "the administrative findings of fact are *conclusive* unless any reasonable adjudicator would be *compelled* to conclude to the contrary") (emphases added). Under this strict standard of review, "we defer to the factual findings of the BIA and the IJ if they are supported by substantial evidence," [9] *see Zhou Yun Zhang v. INS,* 386

8. The IJ conducted his adverse credibility analysis as part of his denial of petitioner's asylum application on the merits, which in turn was premised on the IJ's assumption, made in the alternative, that petitioner's asylum claim was not in fact barred by the one-year rule of 8 U.S.C. § 1158(a)(2)(B). *See* IJ Decision at 4 ("However[,] if the Court did make an[ ] error in finding [petitioner] statutorily ineligible for asylum[,] the Court will proceed with the decision on the basis that [petitioner] is eligible and would find that because she has not been credible today, the Court would deny her application."). Because "an applicant who fails to establish [her] eligibility for asylum necessarily fails to establish eligibility for withholding" of removal, *Zhou Yun Zhang v. INS,* 386 F.3d 66, 71 (2d Cir.2004), the IJ's adverse credibility findings rejecting petitioner's asylum claim apply equally to the IJ's denial of petitioner's application for withholding of removal.

9. The "substantial evidence" standard has its origins in the Administrative Procedure Act, which provides that "[t]he reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... unsupported by substantial evidence in a case ... reviewed on the record of an agency hearing provided by statute ...." 5 U.S.C. § 706(2)(E). That principle of "substantial evidence" was reflected in the former 8

F.3d 66, 73 (2d Cir.2004), and where, as here, the IJ bases his denial of asylum and withholding of removal on a finding that a petitioner's application is not credible, our review is "highly deferential." *See Zhou Yi Ni v. U.S. Dep't of Justice,* 424 F.3d 172, 174 (2d Cir.2005); *Xu Duan Dong v. Ashcroft,* 406 F.3d 110, 111 (2d Cir.2005); *Jin Hui Gao v. U.S. Att'y Gen.,* 400 F.3d 963, 964 (2d Cir.2005); *see also Yun-Zui Guan v. Gonzales,* 432 F.3d 391, 396 (2d Cir.2005) ("Reviewing a factfinder's determination of credibility is ill-suited to attempts to fashion rigid rules of law."); *Zhou Yun Zhang,* 386 F.3d at 73 ("When a factual challenge pertains to a credibility finding made by an IJ ... we afford 'particular deference' in applying the substantial evidence standard.") (quoting *Montero v. INS,* 124 F.3d 381, 386 (2d Cir.1997)). Accordingly, "[w]here the IJ's adverse credibility finding is based on specific examples in the record of inconsistent statements by the asylum applicant about matters material to his claim of persecution, or on contradictory evidence or inherently improbable testimony regarding such matters, a reviewing court will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise." *Zhou Yun Zhang,* 386 F.3d at 74 (internal quotation marks omitted).

Consistent with our " 'exceedingly narrow' " scope of review, *Melgar de Torres v. Reno,* 191 F.3d 307, 313 (2d Cir.1999) (quoting *Carranza-Hernandez v. INS,* 12 F.3d 4, 7 (2d Cir.1993)), we will "look to see if the IJ has provided 'specific, cogent' reasons for the adverse credibility finding and whether those reasons bear a 'legitimate nexus' to the finding."[10] *Zhou Yun Zhang,* 386 F.3d at 74 (quoting *Secaida-Rosales,* 331 F.3d at 307). That review is designed to ensure merely that "credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice." *Id.* Thus, in reviewing an IJ's findings for "substantial evidence," our limited role as an appellate court does not permit us to engage in an independent evaluation of the cold record or ask ourselves whether, if we were sitting as fact-finders in the first instance, we would credit or discredit an applicant's testimony. *See Zhou Yun Zhang,* 386 F.3d at 74 ("[T]he [reviewing] court may not itself hypothesize excuses for ... inconsistencies [in a petitioner's testimony], nor may it justify the contradictions or explain away the improbabilities. Its lim-

U.S.C. § 1105a(a)(4), which the Supreme Court interpreted in *INS v. Elias-Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), to provide that a "determination that [petitioner] was not eligible for asylum *must* be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' " *Id.* at 481, 112 S.Ct. 812 (emphasis added) (quoting 8 U.S.C. § 1105a(a)(4)). Section 1105a(a)(4) was repealed in 1996 and replaced by 8 U.S.C. § 1252(b)(4)(B), which provides that on appeal "the administrative findings of fact are *conclusive* unless any reasonable adjudicator would be *compelled* to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (emphases added). Although the language of § 1252(b)(4)(B) indicates an even more deferential standard of review than was historically provided by the "substantial evidence" standard, we are required to adhere to the law of our Circuit, which continues to characterize our review in terms of "substantial evidence."

10. By requiring in *Secaida-Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003), that an IJ provide "specific, cogent" reasons that bear a "legitimate nexus" to an adverse credibility finding—a standard that can be summarized as a requirement that an IJ base his adverse credibility determination on "material" grounds—we did not set forth a rigid rule of law governing our review of an IJ's credibility determinations. Rather, we intended to plant guideposts to assist a reviewing court's determination of whether an IJ has provided substantial evidence in support of his adverse credibility determination.

ited power of review will not permit it to reverse the BIA simply because [it] disagree[s] with its evaluation of the facts.") (last two alterations in original) (internal quotation marks omitted).

Of course, that an IJ "has relied primarily on credibility grounds in dismissing an asylum application cannot insulate the decision from review." *Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004). If the testimony provided is otherwise "generally consistent, rational, and believable," the presence of some inconsistent testimony need not necessarily be fatal to a petitioner's claims if the disparities are "relatively minor and isolated and do not concern material facts." *See Diallo v. INS,* 232 F.3d 279, 288 (2d Cir. 2000) (citation omitted). Likewise, an IJ's credibility determination will not satisfy the substantial evidence standard when it is based entirely on flawed reasoning, bald speculation, or conjecture. *See Secaida-Rosales,* 331 F.3d at 307, 312. Moreover, where an IJ's decision "omit[s] potentially significant facts" so fundamental to the claim that "we are unable adequately to consider whether substantial evidence support[ed] the BIA's determination," we may remand for further consideration. *See Tian-Yong Chen v. INS,* 359 F.3d 121, 127 (2d Cir.2004).[11] Nevertheless, we may affirm an adverse credibility finding even when the IJ's reasoning is deficient in certain respects, provided that despite any errors—considered in the context of the IJ's entire analysis—we can state with confidence that the IJ would adhere to his decision if we were to remand. *See Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 395, 401-02 (2d Cir.2005).

Although we customarily afford " 'particular deference to the credibility determinations of the IJ,' " *Wu Biao Chen v. INS,* 344 F.3d 272, 275 (2d Cir.2003) (quoting *Montero v. INS,* 124 F.3d 381, 386 (2d Cir.1997)), in this case we are troubled by the fact that the IJ's opinion occasionally lapses into the sort of "bald speculation" we warned against in *Zhou Yun Zhang,* 386 F.3d at 74. For example, the IJ (1) stated that it made "absolutely no sense" that petitioner "decided to risk her pregnancy ... to go back to work"

11. We emphasize that the standard for remand outlined in *Tian-Yong Chen* is permissive—namely, a reviewing court "may," but is not required to, remand "where the agency's determination is based on an inaccurate perception of the record, omitting potentially significant facts." *See Tian-Yong Chen,* 359 F.3d at 127. Indeed, in *Tian-Yong Chen,* we remanded precisely because we had determined that the IJ and the BIA had committed "fundamental error," and therefore reached a decision that was "fatally flawed," due to the "undisputed failure by the IJ and the BIA ... to acknowledge, much less evaluate, [petitioner's] testimony that he had been beaten" by Chinese authorities. *Id.* at 127-28; *see also id.* at 128 ("The IJ erred in overlooking [petitioner's] testimony that he had been beaten, and the BIA perpetuated and compounded that flaw by not only ignoring the testimony but also flatly asserting that no such testimony existed in the record."). We deemed petitioner's statement that he had been beaten to be a "significant aspect of [petitioner's] testimony in support of his claims of past persecution and future persecution," and, consequently, we remanded because the agency's errors could not "be viewed as inconsequential." *Id.* at 128; *see also Alvarado-Carillo v. INS,* 251 F.3d 44, 50 (2d Cir.2001) (remanding where BIA's decision "suffer[ed]" from "serious flaws," including a "patently erroneous" characterization by the BIA of the applicant's testimony). Accordingly, nothing in *Tian-Yong Chen* supports the proposition that a reviewing court is *required* to remand simply because it disagrees with an IJ's evaluation of the facts, particularly where, as here, the IJ's decision is supported by substantial evidence. *Cf. Tian-Yong Chen,* 359 F.3d at 128 (remanding because the BIA's decision was "fatally flawed and *we [we]re unable adequately to consider whether substantial evidence support[ed] the BIA's determination*") (emphasis added).

shortly after discovering that she was pregnant for the second time, IJ Decision at 10; (2) commented that he could not "understand [petitioner's] testimony regarding [officials] wanting to sterilize her after [forcing her to undergo an] abortion," *id.* at 11; and (3) expressed skepticism about petitioner's veracity because "nothing happened to [petitioner's] husband other than brief detention and almost losing his job," *id.* at 12.

There is nothing extraordinary in petitioner's claim that she continued working in the early months of her second pregnancy.[12] Nor would it require a great leap of faith to credit petitioner's contention that officials might attempt to sterilize her after forcing her to undergo an abortion. Finally, we do not believe that detention combined with threatened deprivation of economic livelihood is "nothing." We do not, consequently, rely on the IJ's findings to the extent that he erroneously mischaracterized petitioner's testimony or determined that petitioner was not credible due to perceived implausibilities or inconsistencies that were based solely on the IJ's "bald speculation." *See Zhou Yun Zhang,* 386 F.3d at 74 ("[O]ur review is meant to ensure that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice.").

Notwithstanding the foregoing, it is not enough for petitioner to point to some deficiencies in the IJ's factual analysis because, here, the IJ's denial of petitioner's claim for withholding of removal was supported by substantial evidence and we are confident that the IJ would reach the same decision in the absence of the noted deficiencies. The IJ found petitioner's testimony inconsistent with her medical records,[13] her written asylum applica-

12. Relatedly, the IJ rejected as "incredibly implausible" petitioner's claim that she had gone into "hiding" at her mother's home upon the discovery of her second pregnancy, reasoning that "[t]he purpose of going into ... hiding is to avoid the officials," and yet petitioner's workplace was "the very first place" those officials would have searched for petitioner "other than her home." *See* IJ Decision at 10. We do not find the IJ's reasoning impermissibly speculative on its own terms; nor does the mere characterization of petitioner's claim as "implausible" itself render the IJ's finding erroneous. *See Diallo,* 232 F.3d at 287–88 (stating that an adverse credibility determination may "appropriately [be] based upon inconsistent statements, contradictory evidence, and *inherently improbable testimony*") (emphasis added) (internal quotation marks omitted). *Compare Jin Hui Gao,* 400 F.3d at 964 (concluding that "the IJ had a supportable basis for finding aspects of [petitioner's] testimony inherently implausible and for concluding that these implausibilities further diminished [petitioner's] credibility"), *with Cao He Lin,* 428 F.3d at 403 (rejecting "the IJ's conclusion that [petitioner's] story [wa]s implausible" because the IJ had failed to provide "a reasoned evaluation of [petitioner's] explanations").

13. Specifically, the IJ found inconsistent petitioner's testimony that she had been forced to terminate her second pregnancy after approximately sixteen weeks on October 20, 1997, when instead petitioner's medical records indicated that she had undergone an abortion in July 1993 after eight weeks' gestation. In so finding, the IJ both acknowledged and rejected the explanation provided by petitioner's counsel for this inconsistency—namely, that another "perceive[d]" inconsistency in the medical records rendered them unreliable. The IJ instead emphasized that petitioner's medical records exhibited independent reliability because they correctly provided the date on which petitioner's first child was born. Although petitioner's counsel invites this court to reevaluate the independent reliability of petitioner's medical records, that is simply not our role. A petitioner "must do more than offer a 'plausible' explanation for [her] inconsistent statements to secure relief," *Zhou Yun Zhang,* 386 F.3d at 74, and it is beyond the scope of our reviewing authority to "hypothesize excuses for the inconsistencies, nor may [we] justify the contradictions or explain away the improbabilities," *id.* at 74.

Petitioner's other claim on appeal—namely, that the IJ erred in failing to reject expressly

tion,[14] other documents she submitted in support of her application,[15] and the State Department profile for her region.[16] These findings of fact by the IJ qualify as "specific, cogent" reasons that bear a "legitimate nexus" to the IJ's adverse credibility finding, *Secaida-Rosales,* 331 F.3d at 307 (internal quotation marks omitted), and substantially support the IJ's ultimate determination that petitioner failed to provide a credible account of persecution and thus failed to satisfy her burden of proof. *See Zhou Yun Zhang,* 386 F.3d at 74.

We note that recently, in *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391 (2d Cir.2005), another panel of our Court

petitioner's own explanation for the testimonial inconsistency with her medical records—is similarly without merit. When confronted with this inconsistency, petitioner suggested that the hospital staff had "made a mistake" and indicated that she had told her doctor that she "gave birth to one [child] and the other one was aborted"—an explanation that was insufficient, inasmuch as it did not adequately address *when* but only *whether* petitioner had previously undergone an abortion, forced or otherwise. *Cf. Wu Biao Chen,* 344 F.3d at 275 (rejecting petitioner's "*ex post* justifications" for discrepancies, including petitioner's suggestion that immigration officer had made "a mistake" in drafting airport interview statement). Although we have stated that an IJ is required to "take ... into account ... *significant* factual assertions" offered by a petitioner, *see Cao He Lin,* 428 F.3d at 403 (emphasis added), we have never required, and we do not require here, that an IJ expressly parse or refute on the record each and every one of a petitioner's purported explanations for testimonial inconsistencies or evidentiary gaps. *See Morales v. INS,* 208 F.3d 323, 328 (1st Cir.2000) ("Where, as here, the [BIA] has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented.") (internal quotation marks omitted); *see also* 8 C.F.R. § 1240.11(c)(4) (requiring only that "[a]n adverse decision shall state why asylum or withholding of removal was denied"). Indeed, we presume that an IJ has taken into account all of the evidence before him, unless the record compellingly suggests otherwise. Accordingly, the IJ need not engage in "robotic incantations" to make clear that he has considered and rejected a petitioner's proffered explanation. *Cf. Brown,* 98 F.3d at 694 (rejecting a requirement that district judges engage in "robotic incantations" in the context of sentencing).

**14.** Specifically, petitioner's affidavit submitted in connection with her asylum application indicated that her second pregnancy had been discovered during a required quarterly IUD check-up in October 1997, whereas petitioner testified before the IJ that her second pregnancy had instead been discovered when local birth control officials came to her place of work *after* she had missed both the July and October 1997 IUD check-ups. Because the circumstances under which petitioner's second pregnancy was discovered and terminated were material to her claim of past and future persecution, the IJ did not err in relying on this inconsistency. *See Xu Duan Dong,* 406 F.3d at 111–12 (upholding adverse credibility determination based on omission of "an essential factual allegation underlying petitioner's asylum claim").

**15.** The IJ noted in particular that there were inconsistencies between petitioner's testimony and the documentary evidence in the record regarding her age at the time her IUD was inserted, the date on which the IUD insertion occurred, and when petitioner was instructed to report for sterilization after her abortion. Although the IJ acknowledged that these inconsistencies were "minor," the IJ did not err in stressing the cumulative impact of such inconsistencies in making his adverse credibility determination. *See* IJ Decision at 11 ("Although this is a minor inconsistency[,] there are plenty of minor inconsistencies that do add up and end up to undermine[ ] [petitioner's] credibility."); *see also In re A–S–,* 21 I. & N. Dec. 1106, 1112, 1998 WL 99553 (BIA Feb. 19, 1998) ("[A] credibility determination apprehends the *overall* evaluation of testimony in light of its rationality or internal consistency and the manner in which it hangs together with other evidence.") (emphasis added) (internal quotation marks omitted).

**16.** *See post* at 164–65.

identified three circumstances in which a petition challenging a rejection of an asylum claim could be denied despite errors committed by the IJ. These are (1) where the IJ explicitly relies on a valid alternative ground for denying relief that is not tainted by error, (2) where the error is so "tangential" to the ultimate ruling that there is no realistic possibility of a different result on remand, or (3) where the untainted evidence in support the IJ's conclusion is so "overwhelming" that there is no realistic possibility of a different result on remand. *See id.* at 395, 401–02. These circumstances present non-exclusive variations of the general principle of futility—an error does not require a remand if the remand would be pointless because it is clear that the agency would adhere to its prior decision in the absence of error. *See, e.g., NLRB v. Wyman–Gordon Co.,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (emphasizing that *SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943), "does not require that we convert judicial review of agency action into a ping-pong game" and that remand is not required where it "would be an idle and useless formality"); *NLRB v. Am. Geri–Care, Inc.,* 697 F.2d 56, 64 (2d Cir. 1982) ("[R]eversal and remand are [not] required each and every time an administrative agency assigns a wrong reason for its action; rather, [remand is required] *only* where there is a significant chance that but for the error, the agency might have reached a different result.").

In *Cao He Lin,* the panel rejected every ground for the IJ's adverse credibility finding, as well as the IJ's determination that the petitioner had failed to satisfy his burden of proof. *See Cao He Lin,* 428 F.3d at 404 (concluding that "the IJ's principal reasons for generally discounting [petitioner's] credibility are seriously flawed" and that "[i]n reviewing [certain] subsidiary findings" regarding both credibility and sufficiency of the evidence, "we find that each one is flawed"). Accordingly, the Court remanded because it could not state with confidence that the IJ would make the same decision in the absence of such systemic error. *See id.* at 406. The panel thus held that a remand was appropriate under such circumstances; by also identifying potential circumstances where a remand would *not* have been required, the panel was of course offering dicta. *See Carroll v. Lessee of Carroll,* 57 U.S. (16 How.) 275, 286–87, 14 L.Ed. 936 (1853) (Curtis, J.) ("[I]f [a point of law] might have been decided either way without affecting any right brought into question, then, according to the principles of the common law, an opinion on such a question is not a decision."); *see also United States v. Garcia,* 413 F.3d 201, 232 n. 2 (2d Cir.2005) (Calabresi, J., concurring) ("[Dicta] is not and cannot be binding. Holdings—what is necessary to a decision—are binding. Dicta—no matter how strong or how characterized—are not"). Accordingly, *Cao He Lin* did not provide a binding, comprehensive test for determining all the circumstances where IJ errors *need not* require a remand.

It suffices for us to hold in this case that (1) substantial evidence in the record relied on by the IJ, considered in the aggregate, supports the IJ's finding that petitioner lacked credibility, and (2) disregarding those aspects of the IJ's reasoning that are tainted by error, we can state with confidence that the IJ would adhere to his decision were the petition remanded. Indeed, we do not believe that the erroneous aspects of the IJ's decision in this case were entirely "tangential" to his decision; nor are we persuaded that "overwhelming evidence" supports the IJ's adverse credibility finding. *Cf. Cao He*

*Lin,* 428 F.3d at 406. In suggesting by way of dicta that remand of an error-infected finding could be avoided if "overwhelming" evidence supported the IJ's ultimate finding, or if the IJ's error is sufficiently "tangential," the panel in *Cao He Lin* was simply illustrating two circumstances under which a remand would be futile. *See id.* at 402 (observing that "[t]he futility of a remand would support affirming despite legal error ... in *at least* [those] two circumstances") (emphasis added). The overarching test for deeming a remand futile, as *Cao He Lin* recognized, is when the reviewing court can "confidently predict" that the IJ would reach the same decision absent the errors that were made. *See id.* at 395. The strength of the error-free portions of an IJ's ultimate finding that will permit a panel to state with confidence that a remand would be futile cannot be precisely quantified. Whether the evidence supporting the error-free findings is characterized as "overwhelming," "significant," "highly persuasive," or some other comparable wording is more a matter of linguistics than law. If the reviewing court undertakes to determine whether remand would be futile, it should assess the entire record and determine whether, based on the strength of the evidence supporting the error-free findings and the significance of those findings, it is clear that the IJ would adhere to his decision were the petition remanded. Accordingly, although we certainly retain our ability to *remand* where appropriate, *see id.,* we also retain our ability to *affirm* an IJ's factual findings—including an adverse credibility determination—despite error, where that analysis is otherwise supported by substantial evidence and we can state with confidence that the same decision would be made on remand.[17] *See Jin Chen v. U.S. Dep't of Justice,* 426 F.3d 104, 115 (2d Cir.2005) (affirming adverse credibility finding as "supported by substantial evidence" even though one of the IJ's grounds "d[id] seem to defy logic"); *Zhou Yun Zhang,* 386 F.3d at 78–79 (concluding that any error in requiring corroboration did not merit relief because the IJ's "adverse credibility findings, by themselves, constitute[d] substantial evidence to support" the denial of petitioner's asylum application); *Ramsameachire,* 357 F.3d at 182 n. 3 (affirming adverse credibility finding despite disagreeing with one of the bases for that finding because "the other inconsistencies on which the BIA relied [we]re sufficient to support its judgment"); *see also Tarrawally v. Ashcroft,* 338 F.3d 180, 187 (3d Cir.2003) (affirming adverse credibility finding as supported by "substantial evidence" even though "[s]ome of the IJ's reasons for his adverse credibility determination were based on presumptions not grounded in the record"); *Hakeem v. INS,* 273 F.3d 812, 816 (9th Cir.2001) (finding part of IJ's reasoning "[un]persuasive" but denying petition for review where "[t]he IJ offered alternative reasons .... [that] [we]re supported by substantial evidence"); *Ceballos–Castillo v. INS,* 904 F.2d 519, 521 (9th Cir.1990) (affirming adverse credibility determination "[e]ven though ... one of four reasons cited by the BIA [wa]s not supported by the record" because the BIA's determination of "incredibil[ity] [found] substantial support in the record"); *cf. Jin Shui Qiu v. Ashcroft,* 329 F.3d 140, 149 (2d Cir.2003) (stating that "we will *vacate* BIA conclusions ... insofar as the BIA ... has not supported its findings with record evidence").

Applying this well-established standard of substantial evidence to the facts of this case, we deny the petition for review of the

17. Of course, in reviewing an IJ's decision we "ordinarily will not affirm based on evidence that may appear in the record but that was not relied on in the IJ's decision because we cannot know how the IJ would have viewed evidence she did not analyze." *Cao He Lin,* 428 F.3d at 400; *see also Jin Shui Qiu v. Ashcroft,* 329 F.3d 140, 149 (2d Cir.2003) (noting that "factual findings supporting ... a denial [cannot] be assumed on the basis of record evidence not relied on by the BIA").

IJ's denial of withholding of removal because, although the underlying analysis of the IJ contains errors, the IJ's ultimate ruling—namely, that petitioner failed to provide a credible account of persecution and thus failed to satisfy her burden of proof—is supported by substantial evidence and it is clear that the same decision would be made on remand.

Petitioner's claims that the IJ erred in other respects—(1) by failing to articulate specific reasons for denying her CAT claim beyond his adverse credibility finding, (2) by making insufficient findings with respect to the corroborating documents she submitted in support of her application while improperly faulting her for not producing others, and (3) by relying on the State Department profile—are similarly without merit.

First, as we explained in *Ramsameachire v. Ashcroft,* 357 F.3d 169 (2d Cir.2004), because a "CAT claim lacks a subjective element, focuses broadly on torture without regard for the reasons for that treatment, and requires a showing with respect to future, rather than past, treatment," *id.* at 185 (citing 8 C.F.R. § 208.16(c)(3), (4)), it "must always be considered independently of the resolution of the alien's claims under the INA." *Id.* The fact that a CAT claim does not turn on the applicant's subjective state of mind and that it must be considered separately from the applicant's INA claim, however, does not shift the burden of proof. Under the applicable regulations, it is still the applicant seeking CAT relief who is required to establish that it is more likely than not that she would be tortured if removed to the proposed country of removal. *See* 8 C.F.R. § 208.16(c)(2). Accordingly, where, as here, the applicant relies largely on testimonial evidence to establish her CAT claim, and does not independently establish a probability of torture apart from her stated fear, an adverse credibility finding regarding that testimonial evidence may provide a sufficient basis for denial of CAT relief.[18]

Second, in rejecting an applicant's claim, the IJ should "consider all the evidence in the record that has probative value." *Cao He Lin,* 428 F.3d at 400. But he need not enumerate and evaluate on the record each piece of evidence, item by item, or specifically find, when faulting an applicant for not producing sufficient evidence, that additional documentation was reasonably available to her. *See Yan Lan Wu v. Ashcroft,* 393 F.3d 418, 425 n. 10 (3d Cir.2005) ("[T]he Immigration Judge need not discuss each and every piece of evidence presented by an asylum applicant when rendering a decision, as long as that decision is substantially supported.");

18. Our holding here does not conflict with the statement in *Ramsameachire* purporting to "hold that the INS may not deny an alien's CAT claim solely on the basis of its determination that the applicant's testimony is not credible." *Ramsameachire,* 357 F.3d at 184 (reasoning that "the INS's regulations require it to consider all relevant evidence of the possibility of torture, and the CAT and asylum analyses focus on different elements and therefore must be treated independently"). We read *Ramsameachire* 's focus on the differences between withholding of removal claims under the INA and the CAT to provide that where an applicant can carry her burden on a CAT claim through independent evidence that does not depend on her credibility, the IJ should not reject the claim solely on the basis of an adverse credibility determination. *See id.* at 185 (petitioner's claim did not depend entirely on his own testimony, but rather, was also predicated on independent evidence of country conditions). By contrast, here, petitioner has presented insufficient evidence independent of her own testimony to satisfy her burden under the CAT. Accordingly, as petitioner's testimony was not credible, and that testimony was crucial to her CAT claim, she is not entitled to CAT relief.

*Morales v. INS,* 208 F.3d 323, 328 (1st Cir.2000) ("Where, as here, the [BIA] has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented.") (internal quotation marks omitted); *cf. United States v. Crosby,* 397 F.3d 103, 113 (2d Cir.2005) (noting that a *statutory* duty to "consider" matters relevant to sentencing does not require "robotic incantations" by district judges). Petitioner contends that the IJ not only failed to consider corroborative documents she submitted, but also failed to explain why she should have provided other documents in support of her claim. In *Jin Shui Qiu v. Ashcroft,* 329 F.3d 140 (2d Cir.2003), we recognized that in certain circumstances, an IJ may not deny relief for failure to produce corroborative evidence, unless the IJ has "(a) identifi[ed] the particular pieces of missing, relevant documentation, and (b) show[ed] that the documentation at issue was reasonably available to the petitioner." *Id.* at 153. However, as we stated in *Zhou Yun Zhang,* the "requirement for corroborative documents' 'identification' and 'availability' articulated in *Jin Shui Qiu* ... (as derived from *Diallo v. INS* ) pertains when the IJ or BIA cites inadequate corroboration as a basis for denying [relief] to an applicant who is *otherwise credible.*" *Zhou Yun Zhang,* 386 F.3d at 78; *see Jin Shui Qiu,* 329 F.3d at 152 (stating that "the BIA expressly found no reason to deem [petitioner] incredible"); *Diallo,* 232 F.3d at 287 (noting that "the BIA made no pronouncement on the credibility of [petitioner's] underlying testimony or of his explanations for the lack of additional corroborating evidence"). That is not the case here, as the IJ did not base his rejection of petitioner's claim on an absence of corroborative evidence, but rather, on his finding that petitioner's largely uncorroborated, non-credible testimony was insufficient to establish withholding of removal.

Third, the IJ's reliance on the State Department country report for the Fujian province of China was not in error. As we recognized in *Zamora v. INS,* 534 F.2d 1055 (2d Cir.1976) (Friendly, J.), a report from the State Department is "usually the best available source of information" on country conditions. *Id.* at 1062 ("The obvious source of information on general conditions in the foreign country is the Department of State which has diplomatic and consular representatives throughout the world."); *see also Melgar de Torres,* 191 F.3d at 310, 313 (relying on State Department Profile as "substantial evidence ... of the changed country conditions in El Salvador"). Although we have cautioned that "the immigration court should be careful not to place *excessive* reliance on published reports of the Department of State," *Tian–Yong Chen,* 359 F.3d at 130 (emphasis added), the weight to afford to such evidence "lie[s] largely" within the discretion of the IJ. *See Asociacion de Compositores y Editores de Musica Latinoamericana v. Copyright Royalty Tribunal,* 854 F.2d 10, 13 (2d Cir.1988) ("[W]e must review a challenge to the Tribunal's evidentiary rulings with some deference, for the type of proof that will be acceptable and the weight it should receive lie largely in the discretion of the [Tribunal].") (internal quotation marks omitted). The IJ here did not treat the country report as if it were "binding," nor did he place "excessive reliance" on that report, *Tian–Yong Chen,* 359 F.3d at 130, particularly in light of the IJ's determination that petitioner's testimony was otherwise lacking in credibility. *Cf. Cao He Lin,* 428 F.3d at 402–04 (remanding to BIA because reliance on report produced by State Department was error, inasmuch as the IJ failed to " 'consider ... any contrary or

countervailing evidence' " provided by the applicant, and every other ground for the IJ's adverse credibility finding was erroneous) (internal quotation marks omitted); *Tian-Yong Chen,* 359 F.3d at 128, 130 (instructing immigration court to consider on remand "any contrary or countervailing evidence ... as well as the particular circumstances of the applicant's case," in addition to the State Department's country report, where the IJ and BIA had erroneously "ignor[ed] a significant aspect of [petitioner's] testimony"). Accordingly, the IJ properly considered the inconsistency between petitioner's statements and the country report as part of his overall determination that petitioner's account was not credible.

Because we find that there is substantial evidence supporting the IJ's adverse credibility determination, and petitioner has not shown it is more likely than not that she would be persecuted or tortured were she returned to China, we uphold the IJ's determination, affirmed by the BIA, that petitioner has failed to make the requisite showings to qualify for withholding of removal under either the INA or the CAT.

## CONCLUSION

For the reasons stated above, we DISMISS the petition for lack of jurisdiction to the extent that petitioner contends that the IJ committed an error of law or otherwise abused his discretion when he declined to excuse her lateness in filing her asylum application. Specifically, we hold that we are without jurisdiction to review (1) the IJ's discretionary determination that petitioner failed to establish changed or extraordinary circumstances and (2) petitioner's claim that the IJ "fail[ed] to apply the law," and therefore committed error purportedly giving rise to "questions of law" within the meaning of Section 106 of the REAL ID Act, because there is no disputed issue of statutory construction.

We DENY the remainder of the petition for lack of merit. Insofar as petitioner contends that the IJ violated her rights pursuant to the Due Process Clause, we hold that we possess jurisdiction to review under Section 106, but conclude that the record does not support her claim. Finally, we conclude that the IJ's decision denying petitioner's application for withholding of removal is supported by substantial evidence and it is clear that the same decision would be made were we to remand.