**Enkeleda ZUNA, Petitioner,**

v.

**Alberto R. GONZALES, United States Attorney General,\* Respondent.**

**No. 03–40381.**

United States Court of Appeals, Second Circuit.

March 2, 2006.

\* Pursuant to Federal Rule of Appellate Procedure Rule 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as respondent in this case.

Robert Paves, Christophe & Associates (Alicia T. Simpson, on the brief), New York, NY, for Petitioner.

William S. Johns, Special Assistant United States Attorney (for William J. Leone, Acting United States Attorney for the District of Colorado; Michael E. Hegarty, Assistant United States Attorney, on the brief), Denver, CO, for Respondent.

Present: Hon. PIERRE N. LEVAL, Hon. ROBERT A. KATZMANN, Circuit Judges, and Hon. JANET BOND ARTERTON, Judge.**

## SUMMARY ORDER

Enkeleda Zuna, a native and citizen of Albania, petitions this Court for review of a July 24, 2003 decision of the BIA vacating the November 21, 2000 decision of the Immigration Judge ("IJ") granting Zuna's application for asylum. Zuna's application was based on her alleged persecution by the Albanian government because of her political opinion. We assume the parties' familiarity with the underlying facts and procedural history of the case.

** The Honorable Janet Bond Arterton, United States District Judge for the District of Connecticut, sitting by designation.

Initially, we reject the respondent's contention that Zuna waived her right to pursue certain arguments here by failing to exhaust her remedies below. *See Gill v. INS,* 420 F.3d 82, 86–87 (2d Cir.2005). Accordingly, we consider the entire petition for review.

Where, as here, "the BIA issues a short opinion affirming the IJ's decision in part and modifying it in part, we review the IJ's opinion as modified by the BIA." *Ming Xia Chen v. BIA,* 435 F.3d 141 (2d Cir.2006). We review factual findings under the substantial evidence standard, under which "a finding will stand if it is supported by reasonable, substantial, and probative evidence in the record when considered as a whole." *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003) (internal quotation marks omitted). Where our review involves mixed questions of law and fact, such as "when the situation presented is the BIA's application of legal principles to undisputed facts, rather than its underlying determination of those facts or its interpretation of its governing statutes," our review is *de novo. Diallo v. INS,* 232 F.3d 279, 287 (2d Cir.2000). "[W]hile we generally defer to an IJ's factual finding regarding witness credibility, ... we review *de novo* the question of law regarding what evidence will suffice to carry an asylum applicant's burden of proof." *Qiu v. Ashcroft,* 329 F.3d 140, 146 n. 2 (2d Cir.2003). Notwithstanding our identification of errors in the BIA's or IJ's decisions, we may nonetheless decline to remand where remand would be futile—that is, when we can "confidently predict" that the BIA or IJ would reach the same result on remand. *Xiao Ji Chen v. DOJ,* 434 F.3d 144, 162 (2d Cir.2006).

■ The IJ's failure to summarize accurately Zuna's testimony about the incidents of November 1998 and October 1999 and the BIA's further reduction of these incidents warrant remand. *See Tian–Yong Chen v. INS,* 359 F.3d 121, 123 (2d Cir.2004) (remanding "[b]ecause both the BIA and the IJ overlooked potentially significant evidence supporting [the alien's] application for asylum and withholding of deportation"). The IJ's summary of the November 1998 incident said only that the armed men who interrupted Zuna's political meeting fired shots into the air and shouted insults, but said nothing about Zuna's testimony that one grabbed her by the hair, called her a "sad Democrat" and other "filthy words," and warned her that she had "better stop [her] activities or else [she] will pay for it dearly." The BIA further reduced this event to "six men burst[ing] into a political meeting and [telling] her that she was a 'sad Democrat.'" These summaries ignore the physical assault, context of violence, and the political threat included in Zuna's testimony.

Further, the IJ's summary of the October 1999 incident, while acknowledging Zuna's testimony that she was beaten during her detention and her statement in her affidavit that a police officer had told her that all women Democrats deserved to be raped, minimized Zuna's detailed story of attempted rape and the ten-minute attack in her cell that left her with a scar on her forehead, saying merely that the officer had "made advances towards her." The IJ also erroneously said that Zuna was detained for only three hours when in fact she testified that she was held overnight. The IJ additionally failed to note that Zuna and the other women with whom she had been detained were released with a warning to cease their activities in the Democratic party or they would face bad consequences. The BIA further reduced the summary of the events of October 1999

to Zuna's "arrest during a government protest, 1–day detention, and assault," ignoring the threat accompanying her release and failing to mention the connection between the assault and Zuna's political affiliation.

We require immigration authorities to provide "some indication that [they] considered material evidence supporting a petitioner's claim." *Poradisova v. Gonzales,* 420 F.3d 70, 77 (2d Cir.2005). Indeed, we have stated that "[w]e cannot assume that the BIA considered factors that it failed to mention in its decision." *Id.* (quoting *Anderson v. McElroy,* 953 F.2d 803, 806 (2d Cir.1992)); *see also Qiu v. Ashcroft,* 329 F.3d 140, 149 (2d Cir.2003). Because the record indicates that the IJ and BIA failed to consider the evidence of physical assault and threats connected to political activities, which would be relevant to a decision on whether Zuna had established past persecution or a well-founded fear of future persecution on account of political opinion, we remand for such consideration.

■ In addition, while the IJ properly treated the events Zuna described as having a cumulative effect, the BIA erred in treating them in isolation, seeing no single episode as severe enough to result in persecution. We have emphasized the importance of considering "the cumulative significance of the events described" and have called the failure to do so "erroneous." *Poradisova,* 420 F.3d at 73, 79–80.

It is also telling that the BIA concluded that "neither the respondent's testimony nor the background country information" indicated that any future treatment of Zuna would be "more severe." This conclusion is difficult to reconcile with Zuna's testimony (which was accepted as credible) of the threats she received as part of the November 1998 and October 1999 incidents, since both threats indicated worse

things to come. Moreover, while Zuna concedes that it was within the BIA's discretion to take judicial notice of the 2001 Country Profile, *see Matter of S–M–J–*, 21 I. & N. Dec. 722, 728 n. 2 (BIA 1997), the BIA seems to have relied on the Profile's portrait of general country conditions at the expense of considering Zuna's specific testimony about her own experiences. Because the BIA simply referred to the Profile as if it were dispositive and disregarded Zuna's testimony of threats, its analysis was inadequate. *See Tian–Yong Chen*, 359 F.3d at 130.

Because we cannot "confidently predict" that the BIA would reach the same result on Zuna's application for asylum if it accurately reviewed the entire record, considered evidence of persecution cumulatively, and considered the 2001 Profile in the context of Zuna's credible testimony, remand is warranted. *Xiao Ji Chen*, 434 F.3d at 162.

■ The BIA's rejection of Zuna's application for withholding of removal is dependent on the same incomplete assessment of the record on which its rejection of the application for asylum is based. Therefore, the BIA should also reconsider the application for withholding of removal on remand.

■ Finally, the IJ erred in treating Zuna's application as one only for asylum and withholding of removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(42), 1231(b)(3), not recognizing that Zuna's written application included a request for relief under the United Nations Convention Against Torture ("CAT") (adopted Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85; 8 C.F.R. § 208.16) and that her counsel had specifically stated that CAT relief was sought. Indeed, the IJ specifically mentioned that Zuna testified that she feared being tortured if she returned to her home country.

The IJ had no reason to reach the CAT claim after finding a grant of asylum appropriate, but the BIA had an obligation to consider the CAT claim once it reversed the grant of asylum. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 184–86 (2d Cir. 2004) (noting that "asylum and CAT claims warrant individualized treatment, and ... the INS's regulations require the agency to consider all evidence relevant to the CAT claim" (internal quotation marks and citation omitted)). On remand, the BIA should consider the evidence relevant to Zuna's CAT claim and must rule on this claim if it denies relief on the other claims.

Accordingly, for the reasons stated above, the petition is GRANTED and the order of the Board of Immigration Appeals is VACATED and REMANDED.