**XIONG ZHU, Petitioner,**

v.

**UNITED STATES ATTORNEY GENERAL, Respondent.**

No. 03–40076–ag.

United States Court of Appeals, Second Circuit.

March 6, 2006.

Hanbin Wang, New York, NY, for Petitioner.

Craig W. Haller, Assistant United States Attorney, District of Montanta, for William W. Mercer, United States Attorney, District of Montana, Respondent.

PRESENT: Hon. DENNIS JACOBS, Hon. PIERRE N. LEVAL, and Hon. ROBERT D. SACK, Circuit Judges.

## SUMMARY ORDER

Petitioner Xiong Zhu, a citizen of China, petitions for review of an order of the Executive Office for Immigration Review, Board of Immigration Appeals ("BIA") entered on June 4, 2003, affirming without opinion a March 1, 2002 decision of the Immigration Judge ("IJ"), which denied petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). On appeal, petitioner challenges the denial of asylum and withholding of removal. Where the BIA affirms without opinion, we review the IJ's decision directly. *Dong v. Ashcroft,* 406 F.3d 110, 111 (2d Cir.2005) (per curiam).

The findings of an IJ are reviewed under a "substantial evidence" test. We will not reverse the IJ's factual determinations unless a reasonable adjudicator would be compelled to reach a contrary conclusion based on the evidence before the IJ. *See* 8 U.S.C. § 1252(b)(4)(B). However, we may vacate and remand where we find that the IJ has committed errors and we cannot conclude with confidence that the IJ would have reached the same result in the absence of the errors. *See Xiao Ji Chen v. U.S. Dep't of Justice,* 434 F.3d 144, 158 (2d Cir.2006); *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 406 (2d Cir.2005); *Tian–Yong Chen v. INS,* 359 F.3d 121, 127 (2d Cir.2004).

The IJ found that petitioner's account was not credible. The IJ's adverse credibility determination relied, in substantial part, on misreadings of the record—including a misunderstanding of the 1998 State Department Country Profile for China. The profile states that in Fujian Province, where petitioner lived, "[t]he stan-

dard is a one-and-a-half child policy (e.g., a second child [is] permitted if the first is a female).... In 1996 U.S. Consulate General officers were told by local officials that the policy for rural areas is that a second child is permitted if the first is a daughter and the parents wait 4 years for a second child." Petitioner's testimony was consistent with this policy. He testified that because their first child was a boy, he and his wife were not permitted to have another child. The IJ, however, apparently misunderstood the State Department's description of the Chinese government policy. The IJ wrote:

> What puzzles this Court is why, assuming the respondent's testimony is true, the authorities wanted his wife to undergo an abortion. The respondent never testified that he and his wife were in violation of the family planning policy. The respondent testified that they had one child, a son that was born in March of 1995. According to the respondent, his wife became pregnant again in July of the year 2000, more than five years later[.] The respondent failed to explain why the government of China was preventing them from having a second child.

The IJ apparently believed that under the policy, because petitioner and his wife waited five years between children, they would have been permitted to have a second child. That would have been the case, according to the profile, if the first child had been a girl. The profile, however, makes clear that the allowance for a second child occurs only where the first is a girl. The IJ identified this misunderstood "inconsisten[cy]" as important in the adverse credibility analysis.

The IJ found petitioner's account of his escape from the cadres who attempted to arrest him "implausible." Petitioner testified that "I made several turns then I lost them, then I went to Fuzhou by public bus.... I waive down a bus in the street." The IJ elaborated that "[h]ow the [petitioner] knew this particular bus was going to Fuzhou, as opposed to any other location, was never explained by the [petitioner]." It is true that petitioner did not explain how he knew the bus was going to Fuzhou, but he was not asked to explain it.

The IJ did offer some explanations for his decision that could justify his adverse credibility determination. For example, he stated that he had "taken into account [petitioner's] demeanor while testifying." The IJ also correctly noted that, according to the country profile, the one-child policy is not strictly enforced in rural areas such as Fujian province, and that the "U.S. officials in China are unaware of any so-called abortion certificates," such as that presented by petitioner. He accurately quoted a passage in the profile stating that in Fujian "Consulate General officials found that strong persuasion through public and other pressure was used, but they did not find any cases of physical force actually employed in connection with abortion or sterilization." However, the profile also notes that "[i]n 1996 there were credible reports that several women were forced to undergo abortion in Fujian." Moreover, the IJ misread the profile when he said that, according to the profile, "in the Fujian Province sterilization or the use of the IUD appears to be urged only for families who have already had two children." The profile states that "[i]n the Fuzhou area, sterilization or use of the IUD appears to be urged only for families who have already had two children or perhaps three (if the first two are girls)...." The IJ assumed this description applied to petitioner. However, while petitioner lived in Fujian province, he did not live in the area of Fuzhou, a city within that province.

The IJ also correctly identified inconsistencies in petitioner's testimony concerning when the cadres came to his home. In his application for asylum, petitioner wrote that they came in September 2000; at his hearing he initially said the same. Later in his testimony, however, he said that they came in July 2000. When the IJ questioned petitioner concerning the inconsistency, petitioner again said that the cadres came in July, but then said it was in fact September. Petitioner explained that he had misheard the question and that his wife had fled to her mother's home in July (as he had testified earlier), while the cadres had come for him in September. Yet even this basis for the IJ's adverse credibility determination was not free from error. The IJ said that after petitioner clarified his testimony, "in later testimony [petitioner] referred back to the July visits by the cadre as opposed to the September visits." This "later testimony" is nowhere to be found in the record. Petitioner did, in later testimony, testify that he visited his wife in July. The IJ seems to have misconstrued this testimony as a reference to cadre visits in July.

Some of the justifications that the IJ offered for his adverse credibility determination, including justifications the IJ characterized as important, were based on misreadings of the record; some of the justifications were not. While the error-free justifications could support an adverse credibility determination, in this case we cannot conclude with confidence that the IJ would have reached the same decision in the absence of the errors. We therefore vacate the IJ's denial of asylum and withholding of removal and remand for reconsideration.

Petitioner does not raise his CAT claim on appeal, and that claim is deemed waived. *Yueqing Zhang v. Gonzales,* 426 F.3d 540, 542 n. 1 (2d Cir.2005).

For the foregoing reasons, the decision of the BIA is **AFFIRMED IN PART** and **VACATED IN PART,** and this case is **REMANDED** for proceedings consistent with this order.