**GUANG ZHANG YE, Petitioner,**

v.

**BOARD OF IMMIGRATION APPEALS, Respondent.**

No. 05–6122–ag.

United States Court of Appeals, Second Circuit.

Aug. 9, 2006.

Farah Loftus, Los Angeles, CA, for Petitioner.

David C. Iglesias, United States Attorney, District of New Mexico, David N. Williams, Assistant United States Attorney, Albuquerque, NM, for Respondent.

PRESENT: GUIDO CALABRESI, SONIA SOTOMAYOR and B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

Guang Zhang Ye, through counsel, petitions for review of the BIA decision affirming a decision of Immigration Judge ("IJ") William Van Wyke, denying his claims for asylum, withholding of removal and Convention Against Torture ("CAT") relief. We assume the parties' familiarity with the underlying facts and procedural history.

■■■ Where, as here, the BIA adopts and affirms the IJ's opinion, this Court reviews the IJ's decision. *Twum v. INS*, 411 F.3d 54, 58 (2d Cir.2005). We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard. *See* 8 U.S.C. § 1252(b)(4)(B); *Jin Hui Gao v. United States Atty Gen.*, 400 F.3d 963, 964 (2d Cir.2005); *Zhou Yun Zhang v. INS*, 386 F.3d 66, 73–79 (2d Cir.2004). Under 8 U.S.C. § 1158(a)(3) we lack jurisdiction to review the denial of asylum as time-barred. However, substantial evidence does not support the IJ's adverse credibility determination with respect to the denial of withholding of removal relief.

First, the IJ erred in his determination that Ye failed to introduce evidence indicating that the birth control office issued marriage certificates. The IJ was correct in noting that the certificate did not mention the birth control office and only bore a "Marriage Registration Special Seal of The People's Government of LangQi, Rural District, FuZhou City." However, the IJ erred in concluding that Ye claimed to have received his marriage certificate from "the birth control office." In fact, Ye stated that he had received his marriage registration from "the family planning board." Although it may seem questionable for Ye to have received a marriage certificate from a "birth control office," it is not inherently implausible that a "family planning board" would issue marriage registrations. The IJ, therefore, mischaracterized

Ye's testimony, and improperly required Ye to present background evidence in support of that mischaracterization.

Second, the IJ misstated Ye's testimony and the evidence in the record in finding a discrepancy between: (1) Ye's assertions that his wife did not wish to have an IUD inserted because "the couple wanted to have more children"; (2) Ye's claims that "he and his wife did not intend to have more children during the time while he was in China"; and (3) the fact that Ye's wife "took birth control pills . . . to prevent contraception." Although Ye testified that their desire to have more children was one reason for their unwillingness to have an IUD forcibly inserted, Ye's wife also stated that, after her involuntary abortion, she had gone into hiding to escape the IUD insertion because she had been "afraid of that feeling of being forced." Furthermore, Ye later testified that his wife did not wish to have an IUD inserted because "it would be very uncomfortable," and "the doctors said that it's better, after the C-section . . . if you don't have the [IUD] inserted . . . [for][a]bout a year." Finally, Ye also testified that his wife's doctor had "advised her that it would be best if she didn't get pregnant within a four or five year period." Under these circumstances, it is not inherently unreasonable that Ye's wife resisted the government's efforts to forcibly insert an IUD despite the fact that the couple wished to have children after a period of years and planned to use oral contraception following their son's birth.

Third, the IJ improperly speculated that if there were "medical reasons why [Ye's wife] should not use an IUD," then he saw "no reason to believe that the medical reasons could not have been documented to the birth control office so that she could still be in compliance by using, as she did, birth control pills." Ye testified that he had learned from his wife that birth con-

trol officials would not allow a woman to take birth control pills in lieu of an IUD insertion. It is not inherently implausible that, in its enforcement of family planning policies, birth control officials would use certain types of birth control to the exclusion of others. The IJ's determination in this regard was, therefore, speculative and based on assumptions unsubstantiated in the record.

Fourth, the IJ misstated the record in concluding that although Ye had been in hiding for four years, he employed a snakehead from his home village, rather than one from where he had been in hiding. Ye, in fact, testified that he had used a snakehead that was *not* from his home village, and that he contacted the snakehead through his family. Ye then stated that he did not use a snakehead from the town in which he had been hiding, because he was "not very familiar with the area, so [he] was afraid of being cheated." It is, of course, plausible that Ye would contact a snakehead through people he knew and trusted.

Fifth, the IJ misstated Ye's testimony by stating that Ye had worked continuously in a construction job for a year. The IJ found this testimony indicated that Ye "was not really in 'hiding' and not in the area where he said that he was, but rather [was] going about doing his construction work without fear of the government." Ye did not testify to having worked in construction, nor did he testify to having worked continuously in one job for a year. Instead, Ye stated that while he and his wife were in hiding he was "was always out on the sea fishing," and was "working all different places." Furthermore, it is not inherently implausible that Ye was in hiding, in a town away from his home village, and still working. The IJ's adverse credibility determination in this regarded was,

therefore, not supported by substantial evidence.

Sixth, the IJ erred by stating, "[i]t certainly seems odd that [Ye] should make a point of receiving the marriage license on the very day that his wife [wa]s suffering an abortion against her will." In his decision, the IJ makes it seem as though Ye traveled to the marriage license office after his wife was taken away for an abortion. However, the IJ's statement confuses the testimony. Ye's testimony and asylum application indicate that, upon arriving at the office to receive the marriage registration, Ye's wife was forcefully taken away for an abortion, while Ye was detained at the office. It is not implausible that the office, which the couple had visited for purposes of obtaining their marriage registration, would then issue Ye a marriage registration.

Finally, the IJ erred in determining that Ye's testimony was incredible because Ye equivocated when asked how old his wife had to be in order to get married. The IJ stated that it seemed "unlikely that somebody living in the environment so coercive as that . . . would not know how old his wife needed to be" for purposes of marriage registration. The transcript does not indicate that Ye was asked how old his wife had to be in order to be married, or that he ever gave a such a response. The record does, however, when questioned as to the required age for marriage, Ye testified that he thought that *he* had [to] be twenty-five years old. Thus the IJ mischaracterized this portion of Ye's testimony as well.

Although there are other bases on which the IJ reasonably rested his adverse credibility finding, remand is necessary because we cannot state with confidence that the agency would adhere to its decision in the absence of flaws. *See Xiao Ji Chen v.*

*U.S. Dep't of Justice,* 434 F.3d 144, 161 (2d Cir.2006).

■ Much of the above erroneous analysis by the IJ took place as part of the IJ's denial of Ye's asylum claim, which we do not have jurisdiction to review since the IJ also found it to be time barred. (The agency is of course, free to reconsider the one-year issue in view of our credibility findings, should it wish to do so.) The IJ, however, based his denial of withholding of removal on the same improper adverse credibility determination. Therefore, this denial was improper as well. In his brief to this Court, Ye fails to challenge the IJ's denial of his CAT claim. His CAT claim is, therefore, abandoned. *See Yueqing Zhang v. Gonzales,* 426 F.3d 540, 542 n. 1, 546 n. 7 (2d Cir.2005).

Accordingly, Ye's petition for review is DISMISSED in part, with regard to the IJ's one-year filing deadline determination, and GRANTED in part with regard to the IJ's withholding of removal finding. The BIA's decision is VACATED in part for the foregoing reasons, and the case is REMANDED to the BIA for further proceedings consistent with this order. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED. Any pending request for oral arguments is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), Second Circuit Local Rule 34(d)(1).