**Liang CHEN, Petitioner,**

v.

**UNITED STATES ATTORNEY GENERAL, Respondent.**

**Docket No. 04–4255–AG.**

United States Court of Appeals, Second Circuit.

Argued: June 14, 2006.

Decided: June 23, 2006.

---

Gang Zhou, New York, NY, for Petitioner.

Christian A. Trabold, Assistant United States Attorney (Mary Beth Buchanan, United States Attorney, on the brief), United States Attorney's Office for the

Western District of Pennsylvania, Erie, PA, for Respondent.

Before MESKILL, CABRANES, and WESLEY, Circuit Judges.

PER CURIAM.

Petitioner Liang Chen, a native and citizen of the People's Republic of China, seeks review of a July 23, 2004 order of the Board of Immigration Appeals ("BIA"), affirming without opinion an April 30, 2003 decision by Immigration Judge ("IJ") Paul A. DeFonzo that denied petitioner's application for asylum, withholding of removal, and relief pursuant to the Convention Against Torture ("CAT"). *See In the Matter of Liang Chen*, File No. A 77–660–332 (Immig. Ct., New York, N.Y. Apr. 30, 2003). In his airport interview, asylum application, and testimony before the IJ, Chen alleged that his wife was subjected to a forced abortion by Chinese authorities. The underlying facts and procedural history are a matter of record and we recount here only those aspects that are pertinent to the disposition of the case.

■ Petitioner claims on appeal that the IJ's adverse credibility finding was not supported by substantial evidence and that, to the extent any discrepancies or omissions exist, they are not "central" to his asylum claim.[1] The IJ based his adverse credibility determination principally upon his observations that (1) during his initial airport interview, Chen failed to mention an altercation he purportedly had with family planning officials, but later referenced the altercation in his asylum application and subsequent testimony; (2) Chen did not offer a plausible explanation for why he asserted at his airport interview— and then later abandoned the claim—that his wife had gone missing and was being sought by Chinese authorities; (3) it was implausible that Chinese officials would not have searched for Chen at his karaoke business, given that government officials later sealed off the business following Chen's flight; (4) it was impossible to determine based on the foregoing and the evidence presented whether his wife's abortion occurred, or if it did occur, whether it was voluntary or coerced; and (5) the petitioner made unsupported and conclusory statements suggesting that individuals known to his family were subjected to beatings and abusive treatment upon their return to China.

■ Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision directly as the final agency determination. *Ming Xia Chen v. BIA*, 435 F.3d 141, 144 (2d Cir.2006). We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 156–58 (2d Cir.2006); *Zhou Yun Zhang v. INS*, 386

---

1. Petitioner failed to raise his claim for CAT relief before the BIA and has failed to address either his withholding-of-removal claim or his CAT claim before this Court. Because petitioner did not exhaust his administrative remedies before the BIA, this Court lacks jurisdiction to consider his CAT claim. *See* 8 U.S.C. § 1252(d)(1); *Foster v. INS*, 376 F.3d 75, 78 (2d Cir.2004) (holding that claim was not exhausted where the petitioner's "generalized claims were made to the IJ and not the BIA");

*Cervantes–Ascencio v. INS*, 326 F.3d 83, 87 (2d Cir.2003) (holding that the exhaustion requirements of 8 U.S.C. § 1252(d)(1) require a petitioner "to raise issues to the BIA in order to preserve them for judicial review"). Likewise, because petitioner has not addressed his withholding-of-removal claim before this Court, he has waived any challenge to the IJ's denial of that claim. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 542 n. 1, 545 n. 7 (2d Cir.2005).

F.3d 66, 73 (2d Cir.2004). We give "particular deference to the credibility determinations of the IJ." *Montero v. INS,* 124 F.3d 381, 386 (2d Cir.1997). Accordingly, "[w]here the IJ's adverse credibility finding is based on specific examples in the record of inconsistent statements by the asylum applicant about matters material to his claim of persecution, or on contradictory evidence or inherently improbable testimony regarding such matters, a reviewing court will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise." *Zhou Yun Zhang,* 386 F.3d at 74 (internal quotation marks omitted).

We hold that the IJ's adverse credibility determination was supported by substantial evidence. Although the observations emphasized by the IJ do not—when considered in the context of the full record—unambiguously militate in favor of an adverse credibility determination, they also do not strongly suggest, much less "compel," a contrary conclusion. *See Wu Biao Chen v. INS,* 344 F.3d 272, 274 (2d Cir. 2003); *see also Zhou Yun Zhang,* 386 F.3d at 73 ("Indeed, we must uphold an administrative finding of fact unless we conclude that a reasonable adjudicator would be compelled to conclude to the contrary."). The IJ in this case properly considered each of the potential discrepancies in petitioner's account of his persecution. Moreover, he provided an opportunity for petitioner to clarify or explain his previous statements. Although a reasonable factfinder *could* have disagreed with the IJ's ultimate assessment of petitioner's responses, we do not find that the IJ's assessment was based upon "a misstatement of the facts" or upon "bald speculation or caprice." *Zhou Yun Zhang,* 386 F.3d at 74 ("[O]ur review is meant to ensure that credibility findings are based neither upon a misstatement of the facts in the record nor bald speculation or caprice."); *see also Xiao Ji Chen,* 434 F.3d at 157 ("[I]n reviewing an IJ's findings for 'substantial evidence,' our limited role as an appellate court does not permit us to engage in an independent evaluation of the cold record or ask ourselves whether, if we were sitting as fact-finders in the first instance, we would credit or discredit the applicant's testimony."); *Majidi v. Gonzales,* 430 F.3d 77, 80 (2d Cir.2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief.").

█ Further, petitioner's argument that the discrepancies and omissions noted in the IJ's decision were "not central" to his asylum claim, and thus do not constitute substantial evidence, Brief for Petitioner at 7–8, is unavailing. Although we have stated that an IJ must base an adverse credibility finding on "specific, cogent" reasons that bear a "legitimate nexus" to the finding, *see Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003),[2] an IJ

**2.** The statute governing appellate review of asylum cases now states that

[c]onsidering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no

need not consider the centrality *vel non* of each individual discrepancy or omission before using it as the basis for an adverse credibility determination. Rather, the IJ may rely upon the "cumulative impact of such inconsistencies," *Xiao Ji Chen*, 434 F.3d at 160 n. 15, and may conduct an "overall evaluation of testimony in light of its rationality or internal consistency and the manner in which it hangs together with other evidence," *id.* (quoting *In re A–S–*, 21 I. & N. Dec. 1106, 1112 (BIA 1998)); *see also Tu Lin v. Gonzales*, 446 F.3d 395, 402 (2d Cir.2006)("[E]ven where an IJ relies on discrepancies or lacunae that, if taken separately, concern matters 'collateral or ancillary to the claim' ... the cumulative effect may nevertheless be deemed consequential by the fact-finder.") (quoting *Secaida–Rosales*, 331 F.3d at 308). The IJ's determination here relied largely upon an assessment of Chen's candor regarding whether Chinese authorities were pursuing him and his wife, a matter that was material to whether the petitioner had established a well-founded fear of persecution. In reviewing such determinations of an IJ, we will not "weigh the inconsistencies for ourselves to see if we would reach the same conclusions as the IJ," *Zhou Yun Zhang*, 386 F.3d at 77; rather, our review is an "exceedingly narrow" one, *Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir.1999). Accordingly, because the discrepancies and omissions cited by the IJ, taken together, would

allow a "reasonable adjudicator," *see* 8 U.S.C. § 1252(b)(4)(B), to disbelieve petitioner's account of his persecution, we can find no error in the IJ's determination of adverse credibility. *See id.* (requiring reviewing courts to treat the agency's factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."); *see also Zhou Yun Zhang*, 386 F.3d at 77 (denying a petition for review where "[t]he cited inconsistencies were not the sort of minor and isolated discrepancies *so plainly immaterial* to a persecution claim that *no reasonable fact-finder* could use them as a basis for an adverse credibility ruling") (emphases added) (internal quotations marks omitted).

■ Nor do we find error in the IJ's grounding of his adverse credibility determination partially upon Chen's failure to corroborate his claim that individuals known to his family were subjected to beatings upon their return to China. We have held previously that although "it is inappropriate to base a credibility determination *solely* on the failure to produce corroborative evidence," *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir.2000) (emphasis added), "[t]he presence or absence of corroboration may properly be considered in determining credibility," *id.* *See Xiao Ji Chen*, 434 F.3d at 164.

■ Finally, the IJ committed no error by relying upon Chen's airport interview

---

adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

8 U.S.C. § 1158(b)(1)(B)(iii). We note, however, that this language applies only to asylum applications filed on or after May 11, 2005, the effective date of the REAL ID Act of 2005 ("the Act"), Pub.L. No. 109–13, 119 Stat. 231. *See* Title I, § 101(a)(3) of the Act, 119 Stat. 231, 303 (amending 8 U.S.C. § 1158). Accordingly, although the statutory provision

stating that an IJ may base a credibility determination on an inconsistency, inaccuracy, or falsehood "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim" would seem to overrule certain holdings of *Secaida–Rosales* and other decisions of this Court, as would other portions of the new statutory language, we hold that cases construing the prior statutory language governing asylum appeals remain good law with regard to asylum applications filed before May 11, 2005.

as a basis for the determination of adverse credibility. *See Ramsameachire v. Ashcroft,* 357 F.3d 169, 181–82 (2d Cir. 2004) ("Where the alien's airport statements and his or her later testimony present materially different accounts of his or her purported persecution ... the inconsistencies may render the alien's testimony incredible."). In particular, we find it relevant that the interview in this case (1) was recorded verbatim; (2) included questions reasonably designed to elicit details of petitioner's asylum claim; (3) was conducted through a translator; and (4) was apparently unhindered by prior coercive experiences or interrogations. All of this suggests that Chen's airport statements "provide a reliable record," *id.* at 179, and a permissible "basis for finding the alien's testimony incredible," *id.* at 180. *See id.* ("If, after reviewing the record of the interview in light of these factors and other relevant considerations suggested by the circumstances of the interview, the BIA concludes that the record of the interview and the alien's statements are reliable, then the agency may, in appropriate circumstances, use those statements as a basis for finding the alien's testimony incredible.").[3]

We have considered all of petitioner's remaining arguments and find each of them to be without merit. Accordingly, the petition for review is hereby **DENIED**.

---

**3.** As we observe at note 2, *ante,* our previous holdings regarding the standards governing review of credibility findings by IJs, *see, e.g., Ramsameachire,* 357 F.3d 169; *Secaida–Rosales,* 331 F.3d 297, remain good law with regard to asylum applications filed before May 11, 2005, despite the current language of 8 U.S.C. § 1158(b)(1)(B)(iii) (allowing an IJ to base a credibility determination on, *inter alia,* "the consistency between the applicant's or witness's written and oral statements ... whenever made and whether or not under oath"). Asylum applications filed after May 11, 2005 would be governed by the standards established in 8 U.S.C. § 1158(b)(1)(B)(iii).