Belortaja v. Ashcroft

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: April 12, 2007)                                    Decided: April 27, 2007)

Docket No. 04-4665-ag

JULIAN BELORTAJA,

> *Petitioner*,

v.

ALBERTO R. GONZALES,[1] Attorney General,

> *Respondent.*

Before: WINTER, CABRANES, and HALL, *Circuit Judges.*

Petitioner seeks review of a decision of the Board of Immigration Appeals ("BIA") denying his applications for asylum, withholding of removal, and relief under the Convention Against Torture. We conclude that the BIA's adverse credibility determination (1) was not outside the scope of a prior stipulation and order directing remand, (2) did not violate applicable regulations, (3) did not deprive petitioner of his Fifth Amendment right to due process, and (4) was supported by substantial evidence.

Petition for review denied.

> GLENN T. TERK, Wethersfield, CT, *for Petitioner.*

> MICHAEL C. JAMES, Assistant United States Attorney (Michael J. Garcia, United States Attorney; Michael R. Holden, Assistant United States Attorney; and Ramon E. Reyes, Jr., Assistant United States Attorney, *on the brief*), United States Attorney's Office for the Southern District of New York, New York, NY, *for Respondent.*

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as respondent in this case.

JOSÉ A. CABRANES, *Circuit Judge*:

Petitioner Julian Belortaja, a native and citizen of Albania, seeks review of a decision of the Board of Immigration Appeals ("BIA") made after a stipulated remand from this Court. The BIA affirmed a decision by Immigration Judge ("IJ") Michael W. Strauss denying petitioner's applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), and ordering him removed to Albania. *In re Belortaja*, No. A 77 750 000 (B.I.A. Aug. 5, 2004), *aff'g* No. A. 77 750 000 (Immig. Ct. Hartford Dec. 6, 2001). Petitioner argues, *inter alia*, (1) that the BIA's adverse credibility determination was improper because the IJ's decision (which had been adopted by the earlier, vacated decision of the BIA) did not contain an explicit credibility determination, and (2) that the BIA's adverse credibility determination is, in any event, not supported by substantial evidence. We reject both of these arguments.[2]

## BACKGROUND

We recount here only those elements of the factual and procedural background necessary to resolve the instant petition.

Petitioner attempted to enter the United States illegally in August 2000 and was issued a Notice to Appear in removal proceedings in September 2000. He conceded removability, and, in July 2001, he filed an application for asylum, withholding of removal, and CAT relief. In his application, petitioner alleged that his family had been "politically persecuted by the Communist dictatorship" in Albania and that, more recently, he and his father had been persecuted by the Socialist Party, and by "new Communists," because of their support for the Legality Movement Party ("LMP"), "a party that [seeks] the restoration of a Democratic Constitu[tion]al Monarchy."

---

[2] Because we deny the petition for review on the basis of the BIA's adverse credibility determination, we do not address the BIA's alternative ruling that, even if petitioner were credible and could establish past persecution on political grounds, fundamental changes of conditions in Albania would overcome a presumption that petitioner had a well-founded fear of future persecution.

Following a hearing on December 6, 2001, at which petitioner testified, the IJ denied petitioner's application. In his oral decision, the IJ noted two discrepancies between petitioner's asylum application and his hearing testimony. First, petitioner testified at the hearing that, in April 1999, a friend and "well-known activist" in the LMP was shot and killed while sitting with petitioner in a restaurant. Petitioner stated that he believes "Communists" were responsible for the shooting, and that this incident was one of the reasons why later in 1999 he fled to Greece for about a year. Yet, as the IJ noted, petitioner's asylum application did not mention the shooting.

Second, petitioner testified that after his return to Albania from Greece, he attended a rally organized by the Democratic Party, an ally of the LMP. After the rally, several individuals stopped him on the street, forced him into a car, held a gun to his head, and beat him while threatening to kill him for participating in such rallies. The individuals in the car then hit him "with a hard object" on the head, knocking him unconscious. He woke up on the ground, and a passerby drove him home. Petitioner also testified that he believes "Communists" were responsible for this attack. Although petitioner's asylum application mentioned the beating and threats on this occasion, it did not indicate that he had been knocked unconscious.

These two omissions in his asylum application—the shooting of his friend and being knocked unconscious—led the IJ to "find[] that while [petitioner] may have been a member of the [LMP], his experiences appear to be embellished." The IJ, however, did not explicitly find that petitioner's testimony was incredible because of the omissions. The IJ then discussed a variety of reasons, in addition to the embellishment, why petitioner could not establish past persecution, a well-founded fear of future persecution, or that it was more likely than not that he would be tortured if returned to Albania. These reasons included petitioner's failure to provide evidence of "a widespread practice" of harassment against opponents of the Socialist Party and the fact that petitioner had "good reasons to come to the United States" other than political persecution.

3

Petitioner appealed the IJ's decision to the BIA on December 19, 2001. In a decision dated May 2, 2002, the BIA adopted and affirmed the IJ's December 6, 2001 decision. The BIA noted that "[w]hile the [IJ] appears to have doubted the overall plausibility of large portions of [petitioner's] asylum claim, he did not make an explicit credibility finding in his decision." Nevertheless, the BIA determined that, even assuming petitioner were credible, he could not prevail for the reasons stated by the IJ.

Petitioner then sought review of the BIA's May 2, 2002 decision in this Court. While the petition for review was pending, petitioner and the Government entered into a Stipulation and Order of Settlement and Dismissal, which was filed on December 19, 2003. Pursuant to the stipulation and order, the May 2, 2002 decision was vacated and proceedings were remanded to the BIA for "reconsider[ation] of [petitioner's] appeal in light of *Qui v. Ashcroft*, 329 F.3d 140 (2d Cir. 2003), and *Secaida-Rosales v. INS*, 331 F.3d 297 (2d Cir. 2003)," two decisions of this Court rendered after the BIA issued its decision in petitioner's case.

Upon remand, the BIA issued an independent decision on August 5, 2004—again denying petitioner's appeal. Based on the two omissions in petitioner's asylum application discussed above, the BIA determined that petitioner was not credible. The BIA, citing to *Secaida-Rosales,* stated that "the aforementioned omissions . . . [are] central to [petitioner's] asylum claim and significant enough to support an adverse credibility finding." Alternatively, the BIA concluded that fundamental changes had occurred in Albania so that petitioner would no longer have a well-founded fear of persecution even if he were credible. The BIA's August 5, 2004 decision did not expressly adopt any portion of the IJ's December 6, 2001 decision.

## DISCUSSION

"When the BIA issues its own independent decision and does not adopt the IJ's decision, this Court reviews the decision of the BIA alone." *Mu Xiang Lin v. U.S. Dep't of Justice*, 432 F.3d 156, 159

4

(2d Cir. 2005). We review an adverse credibility determination by the BIA under the substantial evidence standard, treating it as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Cheng Tong Wang v. Gonzales*, 449 F.3d 451, 453 (2d Cir. 2006). We also look to see whether the BIA "has provided 'specific, cogent' reasons for the adverse credibility finding and whether those reasons bear a 'legitimate nexus' to the finding." *Zhou Yun Zhang v. INS*, 386 F.3d 66, 74 (2d Cir. 2004) (quoting *Secaida-Rosales*, 331 F.3d at 307). However, before we turn to the question of whether the adverse credibility determination in the BIA's August 5, 2004 decision is supported by substantial evidence and based on permissible reasons, we must first consider petitioner's contention that, given the procedural posture of this case, the BIA did not have the authority to make such a determination.

## I. The BIA's Authority on Remand

We conclude that the BIA's adverse credibility determination—which it based on the record developed by the IJ—was not prohibited by (1) the terms of the stipulated remand, (2) the regulatory scheme governing the BIA's determination upon remand, or (3) due process considerations.

The December 19, 2003 stipulation between petitioner and the Government vacating the BIA's May 2, 2002 decision did not specify any limits on the BIA's authority to make an adverse credibility determination on remand; nor did it suggest, much less direct, that if the BIA thought such a determination appropriate, it first had to order a further remand to the IJ for a new hearing. Rather, the stipulation simply noted the absence of an explicit credibility determination in the IJ's decision and directed the BIA to reconsider petitioner's case in light of *Qui* and *Secaida-Rosales*. This language neither explicitly nor implicitly precluded the BIA from deciding petitioner's appeal on any grounds permitted by law, so long as the BIA properly considered the two recent cases; it certainly did not reach any conclusion regarding the propriety of an adverse credibility determination by the BIA. *Cf. Biggins v. Hazen Paper Co.*, 111 F.3d 205, 209 (1st Cir. 1997) ("On remand, courts are often confronted with issues

5

that were never considered by the remanding court.  And although the mandate of an appellate court forecloses the lower court from reconsidering matters determined in the appellate court, it leaves to the [lower] court any issue not expressly or impliedly disposed of on appeal." (alteration in original) (internal quotation marks omitted)).  Indeed, because *Secaida-Rosales* was concerned primarily with the validity of an adverse credibility determination, *see* 331 F.3d at 301, 308-12, it would make little sense to read the stipulation directing consideration of *Secaida-Rosales* as foreclosing the possibility of an adverse credibility determination on remand.

We also conclude that the BIA, in making an adverse credibility determination on remand, did not violate regulations governing its authority to review decisions made by the IJ.  Under these regulations, the BIA was authorized to review all aspects of the IJ's decision—including the IJ's factual determinations—*de novo* on remand.  *See* Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54,878, 54,889 (Aug. 26, 2002) [hereinafter "BIA Procedural Reforms"] (noting the BIA's "present authority to conduct *de novo* review of the facts").[3]  Under the *de novo* standard of review, the BIA was free to reach a factual conclusion different than that reached by the IJ on the basis of the existing record, including a different conclusion concerning the credibility of the petitioner.  *See Fen Yong Chen v. Bureau of Citizenship & Immigration Servs.*, 470 F.3d 509, 514 (2d Cir. 2006) ("The BIA's substitution of its judgment for the IJ's is classic de novo review . . . ."); *id.* at 515 (concluding that BIA's decision to "independently assess [petitioner's] credibility without giving deference to the findings of the IJ . . . is de novo review"); *cf. Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003) (noting, in the Employee Retirement Income Security Act ("ERISA") context, that a district court given power to conduct *de novo* review of the facts was authorized to "act[ ] as the

---

[3] A regulation that took effect on September 25, 2002, mandated that the BIA could review "[f]acts determined by the [IJ], including findings as to the credibility of testimony . . . only to determine whether the findings . . . are clearly erroneous," *see* BIA Procedural Reforms, 67 Fed. Reg. at 54,902 (codified at 8 C.F.R. § 1003.1(d)(3)(i)), but this regulation did not apply to appeals—including petitioner's—that were filed before September 25, 2002, *see id.* at 54,905 (codified at 8 C.F.R. § 1003.3(f)).

finder of fact"); *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001) (holding, in the ERISA context, that a district court conducting *de novo* review of the administrative record was "not required to accept . . . as credible" complaints made by a plan participant). It is of no import that the IJ did not make an explicit credibility determination in its initial decision, so long as the IJ elicited and assessed the facts later reevaluated by the BIA. *See Xian Tuan Ye v. Dep't of Homeland Sec.*, 446 F.3d 289, 296 (2d Cir. 2006) (holding that, where the BIA, after remand, upheld an IJ's adverse credibility determination based on an "inconsistency not mentioned in the IJ's most recent decision," the BIA did not engage in improper factfinding because the factual grounds for the determination were "already in the record").

We conclude further that another BIA regulation, 8 C.F.R. § 1003.1(d)(3)(iv), restricted the BIA's ability to add new evidence to the record, but did not prohibit the BIA from making a factual determination—including an adverse credibility determination—upon *de novo* review of the record before it. This regulation became effective on September 25, 2002, and thus did apply to petitioner's appeal. *See* BIA Procedural Reforms, 67 Fed. Reg. at 54,905 (codified at 8 C.F.R. § 1003.3(f)). It states, in relevant part, that "[e]xcept for taking administrative notice of commonly known facts such as current events or the contents of official documents, the [BIA] will not engage in factfinding in the course of deciding appeals. . . . If further factfinding is needed in a particular case, the [BIA] may remand the proceeding to the IJ . . . ." 8 C.F.R. § 1003.1(d)(3)(iv). Comments accompanying the adoption of this regulation make clear that the regulation was intended to restrict the "introduction and consideration of new evidence in proceedings before the [BIA]," BIA Procedural Reforms, 67 Fed. Reg. at 54,891, not the reevaluation of evidence obtained by the IJ previously, *see id.* at 54,892 (noting that the rule "codifies existing [BIA] precedent holding that new facts will not be considered on appeal").

The BIA's adverse credibility determination in this case is properly characterized as a factual

7

determination made upon *de novo* review of the existing record, not as an instance of independent factfinding. It is thus permissible under the regulations. The IJ, after considering the omissions later relied upon by the BIA in its adverse credibility determination, found that petitioner's testimony had been embellished. In its August 5, 2004 decision, the BIA, rather than assuming credibility as it had in its vacated May 2, 2002 decision, looked again at the omissions first described by the IJ. The BIA found that the omissions were indicia not just of embellishment, as the IJ had, but of a lack of credibility. The BIA considered no new evidence in reaching the conclusion that petitioner was not credible. Accordingly, the BIA's adverse credibility determination was authorized by the applicable *de novo* standard of review, and was not prohibited by 8 C.F.R. § 1003.1(d)(3)(iv).

Finally, we reject petitioner's claim that his Fifth Amendment right to due process was violated because he "had no notice that his credibility was in question" and "had no opportunity to explain the omissions referred to by the BIA." Pet'r Br. 35. The record squarely contradicts these assertions. The IJ specifically questioned petitioner about the two omissions at his hearing.[4] Moreover, even though the BIA's May 2, 2002 decision eventually concluded that the IJ had not explicitly ruled on petitioner's credibility, petitioner's initial brief to the BIA contained over six pages devoted to explaining why the IJ "erred in his adverse credibility determination." J.A. 201-207. In discussing whether the BIA should defer to this "adverse credibility finding," petitioner stated that "[i]n this case, the [IJ] was concerned with the asylum application submitted by [petitioner]"; in particular, the IJ "was concerned with what he perceived to be a lack of corroborating evidence to support [petitioner's] claims, *and the failure of [petitioner] to include in his application the incidents in which he was assaulted and his friend was murdered.*" *Id.* at 202 (emphasis added). Even in his supplemental brief to the BIA following remand, petitioner noted

---

[4] When asked why his asylum application did not mention the incident where his friend and fellow LPM activist had been murdered while sitting at the same table in a restaurant, petitioner responded that the attack "was not aimed for" him. When asked why his asylum application did not mention that he had been hit in the head and knocked unconscious after being abducted and beaten, petitioner responded, "I put that in uh, my asylum application that I got beaten by those people and I got the doctor report that he check, check on me."

that "[i]t is not clear from the [IJ's] decision whether or not the [IJ] made an explicit determination that [petitioner's] testimony lacked credibility," but he contended that in any event "not all omissions on an asylum application undermine an applicant's testimony, and the IJ's reliance on these omissions to deny [petitioner's] claim for asylum is misplaced." *Id.* at 6. Given petitioner's opportunity to explain the omissions before the IJ, petitioner's *express and repeated* understanding in his initial brief to the BIA that the IJ had made an adverse credibility determination, and petitioner's argument in his supplemental brief to the BIA following remand that the omissions could not support a denial of his application, petitioner's claim that he lacked notice of a credibility question or an opportunity to explain the omissions in his asylum application is without merit.

## II.  The BIA's Adverse Credibility Finding

Having concluded that it was within the BIA's authority to make an adverse credibility determination upon remand, we now turn to whether this determination was supported by substantial evidence and based on specific, cogent reasons bearing a legitimate nexus to the determination. *See Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 333-35 (2d Cir. 2006). The murder of petitioner's friend and fellow LPM activist—which petitioner testified took place in front of him and prompted him to flee to Greece—is not "incidental or ancillary," but instead goes "to the heart of his asylum claim." *Xu Duan Dong v. Ashcroft*, 406 F.3d 110, 112 (2d Cir. 2005) (internal quotation marks omitted); *cf. Secaida-Rosales*, 331 F.3d at 308-09 (finding that, where a petitioner mentioned in his asylum application that his uncle had been assassinated, but omitted the fact that he was also shot at, this omission did not go to the heart of his claim and was not substantial). Given the omission of this murder in petitioner's asylum application, coupled with the omission regarding his being knocked unconscious during the sole incident of violence allegedly directed against him after his return from

9

Greece, we do not think a reasonable factfinder would be compelled to find petitioner credible.[5] *See Liang Chen v. U.S. Att'y Gen.*, 454 F.3d 103, 107 (2d Cir. 2006) (stating that the agency "need not consider the centrality *vel non* of each individual discrepancy or omission before using it as the basis for an adverse credibility determination").

*   *   *   *

For the foregoing reasons, the petition for review is **DENIED**.

---

[5] Because petitioner's CAT claim depends on the same allegations as his asylum claim—namely, that he would be tortured if returned to Albania because of his affiliation with the LPM—we deny the petition in that respect as well. *See Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 523 (2d Cir. 2005).