**Mamadou Saliou DIALLO, Petitioner,**

v.

**Alberto GONZALES, Respondent.**

No. 07–0781–ag.

United States Court of Appeals, Second Circuit.

Aug. 29, 2007.

724

Matthew J. Harris, Brooklyn, NY, for Petitioner.

Peter D. Keisler, Assistant Attorney General, Civil Division; Emily Anne Radford, Assistant Director; Jesse Lloyd Busen, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for Respondent.

PRESENT: Hon. CHESTER J. STRAUB, Hon. ROBERT D. SACK and Hon. DEBRA ANN LIVINGSTON, Circuit Judges.

### SUMMARY ORDER

Petitioner Mamadou Saliou Diallo, a native and citizen of Guinea of Fulani ethnicity, seeks review of a January 31, 2007 order of the BIA affirming the June 13, 2005 decision of Immigration Judge ("IJ") Adam Opaciuch denying Diallo's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Mamadou Saliou Diallo*, No. A 95 476 599 (B.I.A. January 31, 2007), *aff'g* No. A 95 476 599 (Immig. Ct. N.Y. City, June 13, 2005). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Where, as here, the BIA issues an opinion that fully adopts the IJ's decision, this Court reviews the IJ's decision as supplemented by the BIA. *See Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir.2005). We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Belortaja v. Gonzales*, 484 F.3d 619, 623 (2d Cir.2007). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *See Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 400 (2d Cir.2005).

Here, substantial evidence supports the IJ's adverse credibility finding. First, the IJ accurately noted that Diallo's testimony was "internally inconsistent" as to his duties with the Rally of the People of Guinea ("RPG"), an opposition party. After Diallo offered spare testimony on direct as to these duties, the IJ and counsel for the Department of Homeland Security, consistent with our case law, probed for details. *See Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 152 (2d Cir.2003)(suggesting that where an applicant gives spare testimony, raising the question whether it is fabricated, the IJ and counsel "may wish to probe for incidental details, seeking to draw out inconsistencies that would support a finding of lack of credibility") (internal quota-

tion omitted). Diallo specifically testified on cross-examination that he "helped people to vote because [he] was among those who surveyed or who watched the elections process." [JA 149]. When pressed to name the presidential election in which he participated, however, Diallo changed course, stating that he "didn't participate in any election," because he was supposed to help during the November 2001 election, but "[b]y that time [he] had a problem." [JA 149]. Because this discrepancy was material to Diallo's claim that he was persecuted in Guinea due to his RPG activities, the IJ properly relied on it in rendering his adverse credibility determination. *See Liang Chen v. U.S. Att'y Gen.,* 454 F.3d 103, 106–07 (2d Cir.2006).

The IJ similarly acted reasonably in concluding that Diallo had further undermined his credibility with his testimony about obtaining identity documents, including a passport, "from the very government that he fears during a time that he was allegedly in hiding." Diallo testified that he was detained by the military for ten days, during which time he was beaten and deprived of food. According to his testimony, he was released only after his father bribed one or more guards, who warned Diallo upon release that he should leave the country because if he was again caught, he would be killed. [JA 143–46]. Given this testimony, the IJ asked Diallo why, during the next six months when he allegedly remained in hiding at his uncle's residence, Diallo risked obtaining a passport and other travel documents, including a student visa to the United States. Diallo first explained, not implausibly, that Guinea is not a "country like here in America" where computer records might have revealed the fact of his earlier detention to the officials responsible for issuing identity documents. [JA 153–54]. The IJ's further probing then resulted in the following exchange:

Q. Well, why did you take the chance, though? ... I don't know why your uncle just didn't get a passport in someone else's name or you didn't adopt an alias to get out of the country.

A. I can't take anybody else's passport because if I got out I can't come back again.

Q. Well, why—you don't—why do you want to come back in again? You just said you don't want to return.

A. I mean, if I use somebody else's passport I can't go no where or I can't be that far.

[JA 153].

To be clear, the mere fact that an asylum applicant obtains identification documents while in hiding would not itself provide "a valid, cogent reason for a negative credibility finding." *Secaida–Rosales v. INS,* 331 F.3d 297, 310 (2d Cir.2003). As we have recognized, those fleeing persecution have good reasons to seek legitimate travel documents before leaving the country in which they fear harm and they may well be able to procure them, depending on the surrounding circumstances. *See id.*

At the same time, the IJ was entitled to question the intensity of Diallo's stated fear that "if they capture me again, I'm going to be killed" [JA 148] in light of Diallo's shifting explanations for running the risk of exposing himself so soon after his detention—including his explanation that he needed travel documents to facilitate his return. *See Jin Hui Gao v. U.S. Att'y Gen.,* 400 F.3d 963, 964 (2d Cir.2005)(concluding that "the IJ had a supportable basis for finding aspects of [petitioner's] testimony inherently implausible and for concluding that these implausibilities further diminished [petitioner's] credibility"). Though the IJ neglected ex-

plicitly to discuss these various explanations in rendering his overall conclusion that Diallo's testimony on this subject was not credible, "we presume that an IJ has taken into account all of the evidence before him, unless the record compellingly suggests otherwise." *Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 337 n. 17 (2d Cir.2006). *See also Ming Shi Xue v. BIA,* 439 F.3d 111, 127 (2d Cir.2006)(noting that an IJ need not "call attention to clear discrepancies in an alien's testimony ... when those contradictions were obvious to everyone"). Despite any flaws in the IJ's evaluation of this evidence, moreover, we can state with confidence here that remand is not necessary, given that substantial evidence supports the adverse credibility determination and that "in the context of the IJ's entire analysis ... the same decision would be made if we were to remand." *Xiao Ji Chen,* 471 F.3d at 335.

Confronted with testimony that he believed to be overly vague, the IJ in this case probed for more detail, assessing "not only [Diallo's] demeanor while testifying, but also the rationality, internal consistency, and inherent persuasiveness of his testimony." [JA 82]. However, we might independently evaluate the evidence here, we cannot conclude that the IJ relied on bald speculation or caprice. *See Tu Lin v. Gonzales,* 446 F.3d 395, 398 (2d Cir.2006) (noting that judicial review of a credibility finding "is essentially to ensure that it is based upon neither a misstatement of the facts in the record nor bald speculation or caprice") (internal quotation omitted). *See also Yun–Zui Guan v. Gonzales,* 432 F.3d 391, 394 (2d Cir.2005) (noting particular deference afforded to IJ's credibility determinations). A reasonable fact-finder could have declined to credit Diallo's testimony based on the flaws identified by the IJ, and certainly the record does not compel a

conclusion contrary to the one he reached. Accordingly, Diallo has not met the "strict standard" for overcoming the IJ's adverse credibility judgment. *See Wu Biao Chen v. INS,* 344 F.3d 272, 276 (2d Cir.2003).

In addition, the agency's determination that Diallo failed to meet his burden of proof is supported by substantial evidence. The agency reasonably found that the evidence submitted by Diallo—including the two RPG membership cards issued since Diallo arrived in the United States, the general affidavit from Diallo's uncle, the statement from the Secretary General of the RPG in New York which stated that they "believed" petitioner was detained on account of his activities for the RPG and, finally, the 2002 State Department Country Report—did not provide sufficient additional evidence of a threat to Diallo's life or freedom or a likelihood of torture to satisfy the burden of proof.

In light of the foregoing, we need not reach the agency's alternative finding that assuming his testimony was credible, Diallo failed to establish that he was subject to past persecution or fears future persecution on account of a protected ground.

For the foregoing reasons, the petition for review is DENIED. Petitioner's pending motion for a stay of removal is DENIED as moot.