**Bakary NIAKHATE, Petitioner,**

v.

**Michael MUKASEY, United States Attorney General, Respondent.**

No. 08–0280–ag.

United States Court of Appeals, Second Circuit.

Oct. 6, 2008.

Ronald S. Salomon, New York, NY, for Petitioner.

Gregory G. Katsas, Assistant Attorney General, Civil Division, Richard M. Evans, Assistant Director, Christina Bechak Parascandola, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for Respondent.

PRESENT: Hon. RALPH K. WINTER, Hon. JOSEPH M. McLAUGHLIN and Hon. GUIDO CALABRESI, Circuit Judges.

### *SUMMARY ORDER*

Petitioner, Bakary Niakhate, allegedly a native and citizen of Mauritania, seeks review of the December 17, 2007 order of the BIA affirming the March 1, 2006 decision

408

of Immigration Judge ("IJ") Steven R. Abrams denying petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Niakhate,* No. A97 479 082 (B.I.A. Dec. 17, 2007), *aff'g* No. A97 479 082 (Immig. Ct. N.Y. City Mar. 1, 2006). We assume the parties' familiarity with the underlying facts and procedural history of the case.

When the BIA affirms the IJ's decision in all respects but one, this Court reviews the IJ's decision as modified by the BIA decision. *Xue Hong Yang v. DOJ,* 426 F.3d 520, 522 (2d Cir.2005). We review the agency's factual findings, including adverse credibility findings, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Shu Wen Sun v. BIA,* 510 F.3d 377, 379 (2d Cir.2007). Because Niakhate's petition was filed prior to the effective date of the REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231, the adverse credibility finding must be based on " 'specific, cogent' reasons that bear a 'legitimate nexus' to the finding,'" *Liang Chen v. U.S. Att'y Gen.,* 454 F.3d 103, 106–07 n. 2 (2d Cir. 2006) (quoting *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003)), and may not be based solely on inconsistencies concerning matters collateral or ancillary to the claim. *Secaida–Rosales,* 331 F.3d at 308. However, "the IJ may rely upon the cumulative impact of such inconsistencies, and may conduct an overall evaluation of testimony in light of its rationality or internal consistency and the manner in which it hangs together with other evidence." *Liang Chen,* 454 F.3d at 106–07 (internal quotation marks and citation omitted).

■ Niakhate contends that the IJ's findings as to credibility—that his testimony was vague, insufficiently detailed, and

evasive, and that certain documents appeared to have been "made up for this particular case"—are not supported by the record. However, there is evidence in the record to support each of these findings, and thus we conclude that the adverse credibility determination is supported by substantial evidence.

Niakhate's inability to recall certain dates supports the IJ's finding of vague and insufficiently detailed testimony. For example, when asked how old he was when his father died (a death Niakhate claims to have witnessed), Niakhate responded "I don't know how to calculate that," yet he knew that his brother was 38 at the time. Because his father's death at the hands of governmental authorities would have served to substantiate his own fear of persecution in Mauritania, facts surrounding that death are not merely collateral or ancillary to his claim. *Secaida–Rosales,* 331 F.3d at 308.

Niakhate's evasiveness is illustrated by his responses to questioning regarding certain prescriptions for medication written in Mali. Despite persistent questioning, he could not explain when he had originally received the prescriptions, only that they had been sent to him by a friend after he arrived in the United States. To the extent the IJ observed evasiveness in Niakhate's demeanor, particular deference is given to this assessment as " 'the IJ has the unique advantage' in making credibility findings 'of having heard directly from the applicant.'" *Majidi v. Gonzales,* 430 F.3d 77, 81 n. 1 (2d Cir.2005) (quoting *Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 (2d Cir.2004)). Moreover, while the prescriptions clearly indicate that they were written by a "Mr. Traore Fanto," Niakhate claims to have been treated by a female doctor he witnessed writing the prescription.

The IJ's finding that certain documents appeared to have been "made up for this particular case" is also supported by the record. For example, the IJ discussed in his decision two envelopes Niakhate claimed to have received at an address in the United States that was not his own. One of the envelopes included his mother's return address, which was inconsistent with his testimony that his mother never sent him anything by mail. When asked how his mother's address came to be written on the envelope, Niakhate testified that it could have been a mistake of the person who wrote the letter. In reaching his adverse credibility determination, the IJ properly relied upon the "cumulative impact" of Niakhate's inconsistent testimony as well as the manner in which it "hangs together" with the documentary evidence. *Liang Chen*, 454 F.3d at 106–07.

Finally, we find that the IJ properly probed for details and provided Niakhate with an opportunity to explain improbable and inconsistent testimony. *Gui Yin Liu v. INS*, 475 F.3d 135, 138–39 (2d Cir.2007) ("Where an applicant gives 'spare' testimony, the IJ may 'fairly wonder whether the testimony is fabricated,' and 'may wish to probe for incidental details, seeking to draw out inconsistencies that would support a finding of lack of credibility.'" (quoting *Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 152 (2d Cir.2003))). For example, when the IJ asked what identification Niakhate would show the authorities in Mali in 2001 if he were stopped, Niakhate responded that he would show them hospital papers. When the IJ pointed out that Niakhate did not receive the hospital papers until 2002 and therefore could not have shown them to authorities in 2001, Niakhate offered no explanation. Nor could he adequately explain why, when asked, his mother's return address was written on an envelope when earlier he had testified that his mother never sent him anything by mail.

Because the only evidence that Niakhate was likely to be persecuted or tortured depended on his credibility, the adverse credibility determination in this case necessarily precludes success on his claims for asylum, withholding of removal, and CAT relief where each of those claims was based on the same factual predicate. *See Paul v. Gonzales*, 444 F.3d 148, 156 (2d Cir.2006); *Xue Hong Yang*, 426 F.3d at 523.

For the foregoing reasons, the petition for review is DENIED.