**Lika OSEPASHVILI, Tamar Tokhadze, Petitioners,**

v.

**Alberto R. GONZALES, Attorney General of the United States, Respondent.**

Nos. 06–2588–ag(L), 06–2589–ag(con).

United States Court of Appeals, Second Circuit.

June 4, 2007.

H. Raymond Fasano, New York, NY, for petitioner.

Peter D. Keisler, Assistant Attorney General, Leslie McKay, Senior Litigation Counsel, Kelly J. Walls, Trial Attorney, Office of Immigration Litigation, Washington, D.C., for respondent.

PRESENT: Hon. CHESTER J. STRAUB, and Hon. ROSEMARY S. POOLER, Circuit Judges, and Hon. ERIC N. VITALIANO,* District Judge.

## SUMMARY ORDER

Petitioners Tamar Tokhadze and Lika Osepashvili, mother and daughter, are natives and citizens of Georgia who seek review of a May 11, 2006 order of the BIA affirming the December 29, 2004 decision of Immigration Judge ("IJ") Barbara A. Nelson denying petitioners' application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Lika Osepashvili, Tamar Tokhadze,* Nos. A 96 021 861, A96 021 874 (B.I.A. May 11, 2006), *aff'g* Nos. A 96 021 86 1, A96 021 874 (Immig. Ct. N.Y. City Dec. 29, 2004).

When the BIA summarily affirms the decision of the IJ without issuing an opinion, *see* 8 C.F.R. § 1003.1(e)(4), this Court reviews the IJ's decision as the final agency determination. *See, e.g., Twum v. INS,* 411 F.3d 54, 58 (2d Cir.2005). The Court reviews de novo questions of law and the application of law to undisputed fact. *See, e.g., Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003). The Court reviews the agency's factual findings under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to

the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004). However, the Court will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 406 (2d Cir.2005).

 Here, substantial evidence does not support the IJ's adverse credibility finding. First, the IJ erred in determining that Tokhadze "mentioned nothing about the[ ] assaults in her question and answer interview at the airport," and that she only "offered an extremely general version of this in her credible fear interview ... [and] her written application for asylum." Among a series of basic background questions asked during the airport interview, the immigration officer asked Tokhadze, "Why are you requesting asylum?" In response, Tokhadze stated only, "I do not have good life condition in my country. I want my child to be protected." The immigration officer did not solicit additional details or elaboration in response. Because the immigration officer's question appears to only have solicited a general answer, the fact that Tokhadze did not offer a detailed account of her persecution should not be considered a proper basis for the IJ's adverse credibility determination. Moreover, we have stated that an airport interview "may be perceived by the alien as coercive or threatening," and that "because those most in need of asylum may be the most wary of governmental authorities, the BIA and reviewing court must recognize, in evaluating the statements made in an interview, that an alien may not be entirely forthcoming in the initial inter-

* Eric N. Vitaliano of the United States District Court for the Eastern District of New York, sitting by designation.

view." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 179 (2d Cir.2004).

■ The IJ correctly noted that Tokhadze gave general accounts of her physical assaults in her credible fear interview and asylum application. However, similar to the airport interview, the asylum officer only asked the general question, "What problems did you have in Georgia?" and after Tokhadze responded, the officer failed to solicit additional details or elaboration. As to the asylum application, Tokhadze did not submit a supplemental statement describing her persecution, and her account of persecution is taken from a short answer given in response to question 1B on the application form. We have found that "circumstances surrounding the application process do not often lend themselves to a perfectly complete and comprehensive recitation of an applicant's claim to asylum or withholding, and that holding applicants to such a standard is not only unrealistic but also unfair." *Secaida–Rosales*, 331 F.3d at 308. The IJ, therefore, applied an "unfair standard" in relying on Tokhadze's failure to provide detailed statements in her airport interview, credible fear interview, and asylum application.

■ Substantial evidence also does not support the IJ's conclusion that Tokhadze had "become a Jehovah Witness for the convenience of having a basis for claiming asylum." First, the IJ should not have relied on Tokhadze's lack of knowledge about the Jehovah's Witness faith in reaching her adverse credibility finding. In certain circumstances, an adverse credibility finding might reasonably be based on an applicant's lack of doctrinal knowledge about the religion he or she claims to practice—"for instance, where an applicant claims to have been a teacher of, or expert in, the religion in question." *Yose Rizal v.*

*Gonzales*, 442 F.3d 84, 90 (2d Cir.2006). However, such lack of knowledge cannot be held against an applicant who does not claim to be an expert in or have a deep understanding of the religion in question. *Id.* "Both history and common sense make amply clear that people can identify with a certain religion, notwithstanding their lack of detailed knowledge about the religion's doctrinal tenets, and that those same people can be persecuted for their religious affiliation." *Id.* Tokhadze testified that she had only been a Jehovah's Witness for six or seven months before she came to the United States, and that since arriving in the United States, she was "slowly ... becoming more and more familiar with the concept of Jehovah Witnesses and their beliefs." It cannot be inferred from her testimony that Tokhadze claims to be an expert in, or to have a deep understanding of, the Jehovah's Witness faith. Thus, the IJ's reliance on Tokhadze's failure to recount particular aspects of the faith was improper.

Moreover, the IJ mischaracterized Tokhadze's testimony when she stated that Tokhadze had "not even attend[ed] Jehovah Witness meetings in Georgia." Tokhadze consistently stated that, while in Georgia, she "talked to people about the Jehovah religion," "talk[ed] to people on the street about Jehovah witness bel[ie]fs," had a "meeting with other believers," and attended "religious gatherings." The IJ therefore erred in stating that she did not "attend Jehovah Witness meetings."

■ The IJ further erred in finding that Tokhadze failed to meet her burden for establishing her eligibility for asylum relief. As the IJ correctly noted, the background materials indicate that there have been attacks on Jehovah's Witnesses in Georgia. However, the IJ relies on the

810

erroneous assertion that Tokhadze "had never attended any Jehovah Witnesses meetings in Georgia," to support her conclusion that Tokhadze failed to show that she "would have had any trouble in Georgia on account of her alleged religion."

Due to aforementioned errors in the IJ's analysis, it is impossible for this Court to "state with confidence that the IJ would adhere to [her] decision were the petition remanded." *Xiao Ji Chen v. U.S. Dep't of Justice,* 434 F.3d 144, 161 (2d Cir.2006). Tokhadze's asylum claim must accordingly be remanded for further proceedings.

The petitioners failed to challenge their denial of withholding of removal and CAT relief before either the BIA or this Court. These claims are, therefore, unexhausted. *Foster v. INS,* 376 F.3d 75, 77–78 (2d Cir.2004); *Cervantes–Ascencio v. INS,* 326 F.3d 83, 87 (2d Cir.2003). However, the agency may wish to reconsider the withholding of removal and CAT claims in light of the remand of the petitioners' asylum claim.

Accordingly, Osepashvili and Tokhadze's petition for review is GRANTED, the BIA's order is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this decision. The stay of removal that the Court previously granted in this case is VACATED.